A00A1575. MOORE et al. v. ECI MANAGEMENT et al.
A00A1576. MOORE et al. v. SEARS, ROEBUCK & COMPANY et al.
(542 SE2d 115)

BLACKBURN, Presiding Judge.

On September 13, 1996, Clifford Moore was killed by electrocution while installing a stackable washer/dryer unit in an apartment complex. Following Clifford's death, his parents, Janie and Herbert Moore (the Moores), filed premises liability claims against Concept 21 Apartments, the complex where the accident occurred, and ECI Management, the manager and owner of the complex, for the wrongful death of their son. The Moores also sued Sears, Roebuck & Company, the seller of the washer/dryer, and Whirlpool Corporation, the manufacturer of the washer/dryer, for selling and manufacturing a defective product. All of the defendants moved for summary judgment, which the trial court granted. In appeals which have been consolidated herein for review, the Moores contend that issues of fact remain which preclude summary judgment.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewed in this light, the record shows that, around June 1994, Clifford began working for Adams Transfer & Storage, a company employed by Sears to deliver and install appliances sold by it. After a brief training period, Clifford delivered and installed appliances for Adams Transfer each week, and he installed approximately 75 stackable washer/dryer units prior to his death. On September 13, 1996, Clifford was dispatched to Concept 21 Apartments to install four washer/dryer units. That day, Clifford installed three identical units in three identical apartments before the accident occurred. With regard to the unit in question, the record shows that Clifford failed to turn the electricity off before the installation, and he improperly wired the power cord for the unit to the terminal block located on the back of the washer/dryer. As a result of the reversed connections, once the power cord was plugged in, the frame of the washer/dryer became electrically charged. Clifford then created an electrical circuit between the washer/dryer unit and the panel board on the wall

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

when his body touched both surfaces. Electricity flowed through Clifford Moore's body, thereby killing him.

### Case No. A00A1575

The Moores contend that ECI and Concept 21 Apartments should be held liable for the wrongful death of their son on the basis of premises liability. Citing Occupational Safety & Health Administration regulations and the National Electric Code, the Moores contend that the alcove in which the washer/dryer unit was installed created a dangerous working environment which caused their son's death, arguing that: (1) the area was inadequately illuminated and provided inadequate work space and (2) there was inadequate clearance space around the electrical panel board.

The general rationale for the imposition of premises liability has been set forth as follows:

> One who owns or occupies land and[,] "by express or implied invitation, induces or leads others to come upon his premise for any lawful purpose[ ] . . . is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. While not an insurer of the invitee's safety, the owner/occupier is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge. The owner/occupier owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap. The owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters.

(Citations omitted.) *Robinson v. Kroger Co.*[2]

> The general rule, however, is that a landowner is not liable for injuries to an invitee arising from a patent defect on the premises preexisting the arrival of the invitee and of which the invitee knew or had the means of knowing equal to the landowner. The true ground of liability is the landowner's superior knowledge of the perilous condition and the

---

[2] *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997).

danger therefrom to persons coming upon the property. It is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted.

(Punctuation omitted.) *Horney v. Panter*.[3]

In this case, even if we assume that the alcove exhibited the problems claimed by the Moores, neither Concept 21 Apartments nor ECI had superior knowledge of these defects. It is undisputed that, prior to installing the fatal washer/dryer unit, Clifford installed three others in identical alcoves. Therefore, Clifford was well acquainted with the alcove in which the washer/dryer was installed and had, at least, equal knowledge of any defects therein. See *Wood v. Winn-Dixie Stores*.[4]

> In the instant case, there was no breach of the duty to keep the premises safe for invitees because there is no assertion of the existence of any defects or conditions which were in the nature of hidden dangers, traps, and the like, such that they would not be known to appellant and would not be observed by him in the exercise of ordinary care. [Concept 21 Apartments and ECI] met [their] burden on summary judgment of showing that [they] had no superior knowledge of any defect of which [they] should have warned, or [were] under the duty to warn, [Clifford] as a part of [their] ordinary diligence. Here, [Clifford] was aware that . . . a danger of electrical shock was present.

(Citations, punctuation and emphasis omitted.) *Panter*, supra.

Moreover, from the facts of this case, it does not appear that the working space was the cause of this accident. The undisputed fact is that Clifford miswired the power cord to the unit. Therefore, the proximate cause of this accident was the miswiring, not the work space.

### Case No. A00A1576

The Moores also filed suit against Sears and Whirlpool for selling and manufacturing a defective product. Specifically, the Moores contend that: (1) Whirlpool manufactured and designed a defective washer/dryer unit, thereby subjecting it to strict liability under OCGA § 51-1-11; (2) Sears failed to provide sufficient warnings regarding the dangerous nature of the washer/dryer unit; and (3)

---

[3] *Horney v. Panter*, 204 Ga. App. 474, 477 (3) (420 SE2d 8) (1992).
[4] *Wood v. Winn-Dixie Stores*, 244 Ga. App. 187 (534 SE2d 556) (2000).

Sears did not properly train Clifford to install the washer/dryer unit.

1. With regard to the strict liability claim against Whirlpool, the Moores contend that: (1) Whirlpool should have required an alternatively designed power cord, and (2) the power cord should have been attached to the washer/dryer unit by the manufacturer.

OCGA § 51-1-11 (b) (1) provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

As an initial matter, we must point out that, while Whirlpool manufactured the washer/dryer unit in question, it did not manufacture the power cord. The power cord was manufactured by Triangle Wire & Cable, Inc., against which the Moores have brought no claim. Therefore, to the extent that the Moores claim that the power cord was defective, their suit would lie against Triangle Wire, not Whirlpool.

The Moores contend that Whirlpool defectively designed the washer/dryer unit by failing to place a rejection feature in the terminal block to prevent miswiring. The efficacy of a product liability claim is determined by employing the risk-utility analysis set forth in *Banks v. ICI Americas*.[5]

> In *Banks*, the Supreme Court rejected the proposition that a product is not defective where it is "reasonably suited for its intended purpose and where the presence or absence of a design feature (does) not prevent the product from functioning properly in its intended use." (Punctuation omitted.) *Banks*, supra at 733 (1), overruling *Mann v. Coast Catamaran Corp.*[6] The court instead adopted a "risk-utility" analysis to be used in evaluating design defect cases, "whereby the risks inherent in a product design are weighed against the utility or benefit derived from the product." *Banks*, supra at 734 (1). The court identified several factors relevant to such an analysis, including "the usefulness of the product; the

---

[5] *Banks v. ICI Americas*, 264 Ga. 732 (450 SE2d 671) (1994).
[6] *Mann v. Coast Catamaran Corp.*, 254 Ga. 201 (326 SE2d 436) (1985).

gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; . . . the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance[;] the feasibility of an alternative design; the availability of an effective substitute for the product which meets the same need but is safer; the financial cost of the improved design; and the adverse effects from the alternative."

*Bodymasters Sports Indus. v. Wimberly.*[7]

With regard to these factors, there can be no question regarding the utility of a washer/dryer or the inherent and obvious danger it poses of electrical shock, like all electronic appliances. Likewise, there is no doubt that Clifford, an experienced installer, should have been well aware of the danger of electrocution, about which the installation instructions accompanying the unit warned. There is evidence that Clifford had been trained to attach the power cord properly in an open space prior to plugging in the power cord, and, if these instructions had been followed, the danger posed to him could have easily been avoided.

Furthermore, contrary to the Moores' vociferous arguments otherwise, the evidence shows that the washer/dryer unit was state of the art at the time that it was sold. The Moores contend that the unit should have been sold either with the power cord pre-attached or with a rejection feature on the terminal block which would prevent miswiring. The Moores' own expert, however, testified that it was an industry custom to leave the power cord unattached because some buildings require three-prong power cords and some require four-prong. This expert further stated that no manufacturers use a rejection feature on their appliances, and he was unaware of any studies regarding the feasibility of this proposed design feature. Based on this evidence, the trial court did not err in granting summary judgment.

And, again, we must point out that the direct cause of the accident in this case was the miswiring of the power cord.

2. In the alternative, the Moores contend that Whirlpool and

---

[7] *Bodymasters Sports Indus. v. Wimberly*, 232 Ga. App. 170, 172 (501 SE2d 556) (1998).

Sears were negligent in their design and sale of the washer/dryer unit, arguing, among other things, that there was a failure to adequately warn about the danger of electrocution.

> Georgia law has long recognized (a distinction) between negligence and strict liability theories of liability. *Banks v. ICI Americas*, [supra at 735, n. 3] and cits. These are separate and distinct claims arising from different duties owed by the manufacturer to consumers. The distinction between these causes of action reflects the different duties that devolve upon manufacturers. While a manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses, the manufacturer of a product which, to its actual or constructive knowledge, involves danger to users, has a duty to give warning of such danger. Breach of these different duties hence gives rise to separate and distinct claims. (Citations and punctuation omitted.) *Chrysler Corp. v. Batten.*[8] *Zeigler v. Clowhite Co.*[9] Thus, a duty to warn can arise even if a product is not defective.

(Punctuation omitted.) *Battersby v. Boyer.*[10] An open and obvious danger no longer alone bars design defect claims in Georgia, but may bar "failure to warn" claims. See *Ogletree v. Navistar Intl. Transp. Corp.*[11]

> A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling[,] the seller is not liable. Where, however, he has reason to anticipate that danger may result from a particular use[,] he may be required to give adequate warning of the danger[,] and a product sold without such warning is in a defective condition. However, there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known. The same rule applies where it appears that the person using the product should know of the danger, or should in using the product discover the danger. Whether a duty to warn exists thus depends upon [the] foreseeability of the use in question, the type of danger involved, and the foreseeabil-

---

[8] *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994).
[9] *Zeigler v. Clowhite Co.*, 234 Ga. App. 627, 629 (2) (507 SE2d 182) (1998).
[10] *Battersby v. Boyer*, 241 Ga. App. 115, 117 (3) (526 SE2d 159) (1999).
[11] *Ogletree v. Navistar Intl. Transp. Corp.*, 269 Ga. 443, 446 (500 SE2d 570) (1998).

ity of the user's knowledge of the danger. Such matters generally are not susceptible of summary adjudication and should be resolved by a trial in the ordinary manner.

(Citations and punctuation omitted.) *Yaeger v. Stith Equip. Co.*[12] See also *Zeigler v. Clowhite Co.*, supra.

The danger of electrocution from miswiring an electrical appliance should be both open and obvious to an experienced installer. Therefore, at the outset, the trial court did not err in granting summary judgment on the Moores' duty to warn claim. Moreover, even if the danger was not open and obvious, the Moores' own expert reviewed the warnings accompanying the washer/dryer unit and found them to be adequate.

3. Finally, the Moores argue that Clifford's miswiring of the washer/dryer unit resulted from inadequate training from Sears. This contention lacks merit for several reasons. First, the evidence shows that Clifford, in fact, knew how to properly install the washer/dryer unit in question. He had installed three directly before installing the unit which caused his death. Second, there is no evidence supporting a finding that Sears was responsible for the ongoing training of installers employed by Adams Transfer. Although Sears did conduct a training class two weeks before Clifford was hired, it was not invited back to Adams Transfer to conduct any more classes. Nor is there any evidence of a requirement to do so. As such, there is no evidence to support the Moores' contention that Sears was obligated to train Clifford, and the defendants' motion for summary judgment with regard to this claim was properly granted.

*Judgments affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED NOVEMBER 1, 2000 — 

*John M. Clark, Eric E. Wyatt*, for appellants.

*Carter & Ansley, Keith L. Lindsay*, for appellees (case no. A00A1575).

*Nall & Miller, Michael D. Hostetter, George R. Neuhauser*, for appellees (case no. A00A1576).

---

[12] *Yaeger v. Stith Equip. Co.*, 177 Ga. App. 835, 836 (341 SE2d 492) (1986).