## A01A0365. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. RUSSUM et al.
### (550 SE2d 441)

RUFFIN, Judge.

Bobby Russum sued Georgia Farm Bureau Mutual Insurance Company ("GFB") for GFB's alleged bad faith refusal to provide coverage under a homeowner's policy for claims arising out of a boating accident. Russum moved for partial summary judgment, arguing that the policy provided coverage as a matter of law. GFB filed a cross-motion for summary judgment, asserting that coverage for the accident was excluded under the policy. The trial court granted Russum's motion and denied GFB's motion. GFB appeals, and because we conclude that coverage was excluded under the policy, we reverse.

Summary judgment is appropriate where the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] On appeal, we review a trial court's grant of summary judgment de novo.[2]

The record reveals that, on May 4, 1996, Ella Louise Russum was in a boat on Lake Lanier that collided with a boat owned and operated by Terry Lee Hansen. Ella Russum died as a result of the collision, and her spouse, Bobby Russum, filed a personal injury and wrongful death action against Hansen. That civil action concluded when Hansen consented to a judgment entered against him. In addition, Hansen assigned to Russum any claims Hansen acquired against GFB under his homeowner's policy with the insurer. When GFB refused to provide coverage for the claim, Russum filed the instant bad faith action against the insurer.

GFB originally issued the homeowner's policy to Hansen on June 1, 1994, for a "policy period" extending from that date to June 1, 1995. The policy, which was described on the declaration page as a "continuous renewal policy,"[3] provided liability coverage for personal injury claims against Hansen, but contained a watercraft exclusion. The watercraft exclusion applied to bodily injury arising out of the use of a watercraft

> powered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by an insured. But, outboard motors of more than 25 total horse-

---

[1] OCGA § 9-11-56 (c).

[2] See *Moore v. ECI Mgmt.*, 246 Ga. App. 601 (542 SE2d 115) (2000).

[3] An endorsement to the policy explains that under the "continuous renewal plan" the "policy may be continued in force by payment of the required continuation premium for each successive policy term."

power are covered for the *policy period* if: (a) you acquire them prior to the *policy period* and: (i) you declare them at *policy inception*; or (ii) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors. (b) you acquire them during the *policy period*.[4]

In February 1995, during the original policy period, Hansen purchased the boat involved in the collision, which was powered by a 115 horsepower outboard motor. A few weeks before the original policy period expired, GFB sent Hansen a "renewal declaration," stating that it was a renewal of his original policy. The renewal declaration provided that it was for a "policy period" extending from June 1, 1995, to June 1, 1996, and informed Hansen that "to insure continuous coverage," he must promptly pay the premium. The renewed policy incorporated the same watercraft exclusion contained in the original policy, and it is undisputed that, when Hansen renewed the policy, he did not declare to GFB that he had acquired the boat and motor.

In support of his motion for partial summary judgment, Russum argued that the accident was a covered event because Hansen acquired the boat during the original policy period, and the renewal policy merely extended the expiration date of that period. Thus, Russum asserted, exception (b) to the exclusion, which applies to boats acquired "during the policy period," controls. Alternatively, Russum argued that, because Hansen acquired the boat during the original policy period and was therefore covered during that period, the coverage was extended to the renewal policy period by the "continuous coverage" language in the declaration. In response, and in support of its motion for summary judgment, GFB argued that the policy excluded coverage of claims arising from the accident because Hansen acquired the boat and motor prior to the renewal policy period and did not, as required by exception (a) (i), declare the boat at the inception of that renewal policy period. On appeal, the parties assert that the rules of contract construction support their respective interpretations of the policy.

The pertinent policy language is plain and unambiguous and is therefore not subject to construction.[5] As Hansen's boat was powered by a 115 horsepower motor, Russum's liability claims would be covered only if : (1) Hansen acquired the motor prior to the policy period and declared it to GFB at the policy inception; (2) Hansen acquired the motor prior to the policy period and declared it to GFB within 45 days after the acquisition; or (3) Hansen acquired the motor during

---

[4] (Emphasis supplied.)
[5] See *Payne v. Twiggs County School Dist.*, 269 Ga. 361, 363 (2) (496 SE2d 690) (1998).

the policy period. Significantly, the term "policy period" is plainly defined on the declaration pages of both the original policy and the renewal policy. According to the declarations, the original "policy period" extended from June 1, 1994, to June 1, 1995, and the renewal "policy period" extended from June 1, 1995, to June 1, 1996. Because Hansen acquired the motor in February 1995, which was during the original policy period, the third exception stated above applied during that policy period, and the motor was covered until the end of that period. But, the policy language expressly states that the motor was only "covered for the *policy period.*"[6]

When Hansen renewed his policy, the only relevant change was the "policy period," which again was plainly defined on the declaration page as the time from June 1, 1995, to June 1, 1996. Inasmuch as Hansen did not acquire the motor during this time, the third exception stated above, pertaining to motors acquired during the policy period, no longer applied. Furthermore, inasmuch as Hansen acquired the motor prior to that policy period, and *never* declared the acquisition to GFB, either at the "policy inception"[7] or within 45 days after acquiring it, these exceptions are inapplicable.

There is simply no language in either the original policy declaration or in the renewal policy declaration to support Russum's assertion that the second renewal policy merely extended the expiration date of the original "policy period." The dates of each policy period were plainly defined, and "[w]e will not strain to extend coverage where none was contracted or intended."[8] Likewise, the fact that Hansen was covered during the policy period in which he acquired the motor is inconsequential. Though the renewal declaration generally provided for "continuous coverage," such broadly inclusive provisions in insurance contracts do not prevail over more specific provisions.[9] The specific watercraft exclusion at issue here did not excuse Hansen from complying with the *plainly stated* requirement of declaring the motor at the policy period inception if he desired to continue receiving the watercraft liability coverage provided during the original policy period. Similarly, as stated above, the watercraft exclusion clearly stated that the motor was only "covered for the policy period," defined as the term extending from June 1, 1994, to June 1, 1995.

---

[6] (Emphasis supplied.)

[7] To the extent that the term "policy inception" is ambiguous, it is capable of only two interpretations, neither of which supports coverage. Whether the term "policy inception" was intended to mean the beginning of the original "policy period," or the beginning of the renewal policy period in which the event occurred, the fact that Hanson *never* declared to GFB that he acquired the boat precludes application of the exception.

[8] *Jefferson Ins. Co. &c. v. Dunn*, 269 Ga. 213, 216 (496 SE2d 696) (1998).

[9] See *Ga. Baptist Children's Homes &c. v. Essex Ins. Co.*, 207 Ga. App. 346, 348 (1) (427 SE2d 798) (1993).

Finally, the case of *Pennsylvania &c. Ins. Co. v. Dunlap*,[10] relied on by Russum, does not require a different result. In *Dunlap*, the insurance company "renewed" the policy, but changed the terms of the original policy and never informed the insured of the change. We concluded that under such circumstances, the insurance company was precluded from relying on the changed terms because "an insurer, in issuing a policy which differs from the original, is obligated to inform the insured as to the changes if there has been no special agreement for terms differing from those of the original contract."[11] In contrast, the relevant terms of the original and renewal policy in this case were identical, and the policy declaration clearly informed the insured that the "policy period" had changed.

For these reasons, we conclude that the trial court erred in granting partial summary judgment to Russum and in denying GFB's motion.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 8, 2001 — ▮▮▮▮▮▮▮

*Fain, Major, Wiley & Brennan, Charles A. Wiley, Jr., Kim M. Jackson*, for appellant.

*Caudell & Hotard, Bobby C. Caudell, Thomas G. Hotard, Jr.*, for appellees.

---

[10] 153 Ga. App. 116 (264 SE2d 483) (1980).
[11] (Punctuation omitted.) Id. at 118 (1).