WHITE et al., Appellants,

v.

CROWN EQUIPMENT CORPORATION et al., Appellees.

[Cite as *White v. Crown Equip. Corp.*, 160 Ohio App.3d 503, 2005-Ohio-1785.]

Court of Appeals of Ohio,
Third District, Auglaize County.

No. 2–04–43.

Decided April 18, 2005.

504

Daniel N. Abraham and Eleni A. Drakatos, for appellants.

Jeffrey F. Peck, for appellees.

SHAW, Judge.

{¶ 1} The plaintiffs-appellants, James and Yolanda White, appeal from the November 9, 2004 judgment of the Common Pleas Court of Auglaize County, granting partial summary judgment in favor of the defendant-appellee, Crown Equipment Corporation ("Crown"). Although this appeal has been placed on the accelerated calendar, this court elects to issue a full opinion pursuant to Loc.R. 12(5).

{¶ 2} Crown is an Ohio corporation that manufactures lift trucks and sells its product through another company, OKI Systems, located in Ohio. On February 22, 1993, OKI systems sold a lift truck to the Kroger Company for use in its warehouse in Atlanta, Georgia. On July 15, 1993, the lift truck was installed in the Kroger warehouse by a Crown branch office located in Georgia. Subsequently, sometime between July 1993 and November 2003, Atlas Cold Storage, also known as CSI, took over the operation of the Kroger warehouse.

{¶ 3} On May 21, 2002, James White, a resident of Georgia and an employee of CSI, was working in the CSI warehouse when employee, operating the lift truck allegedly struck James because the brake system on the lift truck failed. As a result, James had his leg amputated below his right knee.

{¶ 4} In November 2003, the Whites filed suit in a Georgia state court, and Crown removed the case to the United States District Court for the Northern District of Georgia. In February 2004, the Whites dismissed the Georgia case, without prejudice, and on May 17, 2004, filed a complaint in the Common Pleas Court of Auglaize County alleging, inter alia, negligence and products liability. On July 12, 2004, Crown filed a motion for summary judgment, or in the alternative a motion to dismiss, arguing that the Whites' claims are governed by

the statute of repose under Georgia law, and on October 21, 2004, the Whites filed their motion contra. On November 9, 2004, the Common Pleas Court of Auglaize County issued an order and judgment entry granting partial summary judgment in favor of Crown, which dismissed all the Whites' claims except a failure-to-warn negligence claim. It is from this judgment that the Whites appeal, alleging four assignments of error. For the sake of judicial economy, the assignments will be consolidated for discussion.

### Assignments of Error

The trial court erred to the prejudice of appellants James C. White, et al. In granting partial summary judgment in favor of Crown Equipment Corporation ("Crown") and in dismissing appellants' Ohio tort claims against Crown since Crown was not entitled to partial summary judgment under Civil Rule 56 because genuine issues of material fact were presented for determination by the jury.

The trial court erred to the prejudice of appellants James C. White, et al. In granting partial summary judgment in favor of Crown and in dismissing appellants' Ohio tort claims against Crown by applying Georgia law.

The trial court's action in partially granting Crown's motion for summary judgment abridged appellants' constitutional right to due process guaranteed by Article I, Section 16 of the Ohio Constitution.

The trial court's action in partially granting Crown's motion for summary judgment abridged appellants' constitutional right to a jury trial guaranteed by Article I, Section 5 of the Ohio Constitution and the Seventh Amendment to the U.S. Constitution.

{¶ 5} A summary judgment will be affirmed only where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Id.

{¶ 6} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits." Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604

N.E.2d 138.  Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the nonmoving party to show why summary judgment in favor of the moving party should not be had.  See Civ.R. 56(E).  In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be rendered against him."  Id.

{¶ 7}  We begin by analyzing whether Ohio or Georgia substantive law is applicable to the case at bar.  As we have previously noted, "The trial court's choice of law is subject to a de novo standard of review by this court."  *Bertram v. Norden*, 159 Ohio App.3d 171, 2004-Ohio-6044, 823 N.E.2d 478, at ¶ 15, citing *Callis v. Zilba* (2000), 136 Ohio App.3d 696, 698, 737 N.E.2d 974.

{¶ 8}  In Ohio, prior to 1971, it was well established that the application of lex loci delicti automatically determined what state law controls a particular case.  See *Freas v. Sullivan* (1936), 130 Ohio St. 486, 5 O.O. 139, 200 N.E. 639; *Ellis v. Garwood* (1958), 168 Ohio St. 241, 6 O.O.2d 22, 152 N.E.2d 100; *Lyons v. Lyons* (1965), 2 Ohio St.2d 243, 31 O.O.2d 504, 208 N.E.2d 533, overruled on other grounds, *Shearer v. Shearer* (1985), 18 Ohio St.3d 94, 18 OBR 129, 480 N.E.2d 388.  In 1971, however, the Ohio Supreme Court began to refine the rigid and traditional conflict-of-law rules and moved towards a modern, case-by-case approach.  See *Fox v. Morrison Motor Freight* (1971), 25 Ohio St.2d 193, 54 O.O.2d 301, 267 N.E.2d 405.  Based on the rulings of *Fox* and its progeny, the Ohio Supreme Court, keeping in mind the traditional approach, adopted the theory found in 1 Restatement of the Law 2d, Conflict of Laws (1971), for determining the choice of law in a particular case.  *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 341–342, 15 OBR 463, 474 N.E.2d 286.

{¶ 9}  In *Morgan*, the court outlined 1 Restatement of the Law 2d, Conflict of Laws, as follows:

Pursuant to [Section 146 of the Restatement of the Law of Conflict of Laws], a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit.  To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145.  The factors within [Section 145] are:  (1) the place of the injury;  (2) the place where the conduct causing the injury occurred;  (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties;  (4) the place where the relationship between the parties, if any, is located;  and (5) any factors under Section 6 which the court may deem relevant to the litigation.

Id. at 342, 15 OBR 463, 474 N.E.2d 286.  Section 146 at the time *Morgan* was decided provided:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with

respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and to the parties, in which event the local law of the other state will be applied. 1 Restatement of the Law 2d, Conflict of Laws (1971) 430. Finally, as quoted in *Morgan*, the factors enumerated in Section 6 are as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of law to be applied.

1 Restatement of Law 2d, Conflict of Laws (1971) 10.

{¶ 10} For guidance in the instant case, we turn to the facts and outcome of *Morgan*. In *Morgan*, Biro Manufacturing Company was an Ohio corporation that sold a meat grinder with a protective guard to a Tennessee corporation in 1959. *Morgan*, 15 Ohio St.3d at 339, 15 OBR 463, 474 N.E.2d 286. Subsequently, the Tennessee corporation resold the meat grinder, without the original protective guard, to a supermarket owner in Kentucky. Id. In 1979, a supermarket employee was injured when his hand slipped into the meat grinder, and subsequently, he filed suit in Ohio against Biro alleging products liability. Id. The Ohio Supreme Court, reviewing whether Kentucky or Ohio law should apply, determined, using the factors outlined, supra, that Kentucky law should apply. Id. at 342–343, 15 OBR 463, 474 N.E.2d 286. The court stated:

Turning to the facts of this case, it is clear that the state of Kentucky has the most significant relationship to the parties and events herein. The courts below found that appellant's injury took place in Kentucky and that he was a resident thereof at the time of his accident. Further, appellant Morgan was employed at a supermarket in Kentucky and received workers' compensation benefits under Kentucky law. Finally, the inspection of the meat grinder's condition was the responsibility and within the exclusive interest of the state of Kentucky.

The state of Ohio has only two contacts of any significance to this litigation. First, appellee is incorporated under the laws of this state. Second, the

product was manufactured in Ohio. It is without question that our state has an important policy objective in deterring the manufacture and sale of defective products. * * * However, the mere fact that twenty-five years ago appellee manufactured a commercial meat grinder in Ohio and subsequently sold it to a Tennessee corporation with a protective guard in place which, in turn, was removed and a Kentucky resident was injured thereby, does not justify an application of Ohio law.

Id.

{¶ 11} We conclude that the facts in the instant case are similar to those in *Morgan,* and, therefore, the application of Georgia law is appropriate. First, we note that White was injured in Georgia, and he was resident thereof at the time of the accident. Furthermore, White was employed by a corporation in that state and was eligible to receive workers' compensation benefits pursuant to Ga.Code Ann. 34–9–1.[1] Finally, as in *Morgan,* the inspection of the lift truck's condition was the responsibility of the state of Georgia.

{¶ 12} Ohio has only two contacts of any significance in this litigation. First, Crown Equipment is incorporated under the laws of this state. Second, the lift truck was manufactured in Ohio. Clearly, Ohio has an important policy objective in deterring negligently manufactured products from being sold in this state. Even so, the record indicates without contradiction that once the lift truck was sold to the Kroger Company, neither the Kroger Company nor CSI ever contacted Crown to inspect, maintain, or perform planned maintenance on the braking system.[2] Consequently, we hold that the application of Georgia substantive law is appropriate in this case.

{¶ 13} Nevertheless, choice-of-law provisions apply to determine the application of state substantive law; therefore, while a forum may apply the substantive law of another state, the forum's own procedural law will govern the case. See *Howard v. Allen* (1972), 30 Ohio St.2d 130, 134, 59 O.O.2d 148, 283 N.E.2d 167; *Lawson v. Valve–Trol Co.* (1991), 81 Ohio App.3d 1, 4, 610 N.E.2d 425 ("In choice-of-law situations, the procedural laws of the forum state, including applicable statute of limitations, are generally applied"). Accordingly, we must determine whether the application of the Georgia statute of repose[3] is substan-

---

1. The record does not indicate whether White actually received workers' compensation benefits in Georgia.

2. The record indicates that Crown was contacted only once to perform a warranty repair of the power unit, which is unrelated to the braking system.

3. The Georgia statute of repose states: "No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or

tive law. Based on the Georgia Supreme Court ruling in *Browning v. Maytag Corp.* (1991), 261 Ga. 20, 21, 401 S.E.2d 725 (holding that the statute of repose is substantive law), we conclude that it is. In sum, applying Georgia substantive law to this case includes the application of the statute of repose, which subsequently bars the Whites from recovering against Crown.[4]

{¶ 14} Finally, we turn to whether applying Georgia substantive law to the case at bar precludes the Whites' right to due process of law under the Ohio Constitution and a jury trial under both the Ohio Constitution and the United States Constitution. We note that in *Love v. Whirlpool* (1994), 264 Ga. 701, 449 S.E.2d 602, the Georgia Supreme Court ruled that the statute of repose in question was constitutional under the United States Constitution. Thus, we summarily reject the notion that the Whites' due process or jury-trial rights are circumvented by the application of Georgia law. See *Phillips v. Motrim* (Dec. 5, 1996), 5th Dist. No. 96–CA–1, 1996 WL 753144, at * 3 ("We are required by the United States Constitution to give full faith and credit to public acts, records, and judicial proceedings of every other state. Art. IV, Sec. 1. This court is unable to declare an Illinois statute unconstitutional").

{¶ 15} Accordingly, all four assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

CUPP, P.J., and ROGERS, J., concur.

---

consumption of the personal property causing or otherwise bringing about the injury." Ga.Code Ann. 51–1–11(b)(2).

4. In the instant case, the Georgia statute of repose would bar legal action ten years after the purchase of the lift truck. The record indicates that the sale was made February 22, 1993, and the injury occurred on May 21, 2002. Thus, the Whites had nine months, from May 21, 2002, until February 22, 2003, to file suit and not be barred by the statute of repose under Georgia law.