OPINION *Page 2 
{¶ 1} The plaintiffs-appellants, James White and Yolanda White, appeal the judgment of the Auglaize County Common Pleas Court granting summary judgment to the defendant-appellee, Crown Equipment Corporation. For the reasons stated herein, we affirm the judgment of the trial court.
 {¶ 2} On May 17, 2004, the Whites filed a complaint in Auglaize County Common Pleas Court against Crown. In the complaint, James alleged that Crown had produced a forklift with a defective braking system and asserted claims for negligence, product liability, breach of implied warranty, breach of express warranty, and punitive damages. James' claim for product liability was divided into several "sub-claims," including failure to warn (based on Crown's actual and constructive knowledge of a defect), defective design, defective manufacture, and failure to conform to a representation. The complaint also asserted one claim for loss of consortium on Yolanda's behalf.
 {¶ 3} The Whites' complaint was filed after James was injured during the course of employment with Atlas Cold Storage, located in the state of Georgia. In the early morning hours of May 21, 2002, James was working as an order picker. On that date, James was required to use a pallet jack to move pallets of product from Building D to Building A within the warehouse facility. A fellow employee, Michael Needham, was operating a forklift, which had been manufactured by *Page 3 
Crown, in Building A. As James operated his pallet jack in a northerly direction in the travel aisle, Needham was operating the forklift in a westerly direction in one of the side aisles, which intersected the travel aisle. James noticed the forklift moving in his direction, jumped off the pallet jack, and tried to move out of harm's way. Needham took evasive action, which included turning the forklift. However, the forklift hit James, trapping him between it and the pallets that had been on the pallet jack. James' left leg was pinned under the forklift. Needham moved the forklift to free James' leg and went to seek assistance. As a result of his injuries, James' leg was amputated just below the knee.
 {¶ 4} Crown filed its answer on June 25, 2004, and on July 9, 2004, Crown filed a motion for summary judgment, or in the alternative, a motion to dismiss. The Whites filed a response to Crown's motion on October 21, 2004, and on November 9, 2004, the trial court filed its judgment entry, holding that Georgia's substantive law applied to the case, and that the only claim that could survive Georgia's statute of repose was a claim for failure to warn based on Crown's actual knowledge of a defect. Accordingly, the court dismissed each of the other claims and granted partial summary judgment to Crown. The Whites appealed the trial court's decision, and in White v. Crown Equip. Corp.,160 Ohio App.3d 503, 2005-Ohio-1785, 827 N.E.2d 859, this Court held that Georgia's substantive law applied and affirmed the decision of the lower court. *Page 4 
 {¶ 5} On remand, the parties continued with the discovery process, and on January 16, 2007, Crown filed a second motion for summary judgment. The Whites filed a responsive memorandum, and on February 27, 2007, the trial court granted summary judgment to Crown. In its judgment entry, the court reiterated that James was required to show actual knowledge of a defect to prove his failure to warn claim. The court indicated that the expert testimony produced by James supported the theory that Crown may have had constructive knowledge of a defect. The court also determined that Crown had tested its forklift in compliance with applicable federal standards, which permit manufacturers to choose one of two test procedures. The court noted that contrary to Plaintiff's expert's position, Crown was not required to use the second test, and the expert's testimony as to which was the "better" test was irrelevant since the government standards allow for manufacturers to choose between either of the two provided tests. The Whites appeal the trial court's judgment, asserting one assignment of error for our review.
 Assignment of Error The trial court erred by granting summary judgment in favor of Defendant-Appellee Crown Equipment Corporation.
 {¶ 6} In support of their assignment of error, the Whites raise two arguments. First, they contend that the trial court erred when it required proof that Crown had actual knowledge of a defect. The Whites argue that under Georgia law, a claim for failure to warn may be brought based on both actual and *Page 5 
constructive knowledge. In the alternative, the Whites argue that even if the trial court was correct when it required actual knowledge, the evidence indicates that Crown had actual knowledge that the brakes on its forklift were defective, and therefore, it had a duty to warn. The crux of this argument is that OSHA requires employers to purchase forklifts that conform with ANSI standard B56.1.
 {¶ 7} Under the applicable ANSI standard, the manufacturer may test its brakes by using either the drawbar drag test or the stopping distance test. Without detailing the specifics of each test, the drawbar drag test is conducted by applying the brakes on the forklift. A different vehicle is used to tow the forklift, and the force needed to move the forklift is measured to ascertain whether the brakes are capable of stopping within the applicable distance. Under the stopping distance test, a forklift carrying a load of a specified weight is brought up to a specified speed, the brakes are applied, and the distance is measured from where the brakes were applied to where the forklift actually comes to rest. Under this test, the forklift must stop within a specified distance.
 {¶ 8} Crown tested its forklifts by using the drawbar drag test. The Whites' expert witness, Dr. Isaac Avitan, opined that compliance with the drawbar drag test is not the equivalent of compliance with the stopping distance test, and Crown should have used the stopping distance test, which is a more reliable test. *Page 6 
The Whites essentially allege that Crown's forklifts[1] did not comply with the ANSI standard at the time of James' injury.
 {¶ 9} In response, Crown contends that James is barred from arguing the issue of actual versus constructive knowledge by the law of the case doctrine. Crown argues that the Whites should have appealed the trial court's dismissal of their claim for failure to warn based on constructive knowledge on the first appeal, but that they opted to appeal only the choice of law issue. In response to the Whites' second argument, Crown contends it did not have actual notice that its forklift would not stop within the ANSI standard distances because the forklift passed the drawbar drag test when it was manufactured. Crown argues that once the forklifts are sold to customers, the customer is instructed on how to adjust the brakes so the forklift will stop within the shortest distance without tire slide under the customer's specific facility conditions. Crown contends that the results of Avitan testing four forklifts in the field were not conclusive and cannot be relied upon to prove that the forklifts did not meet ANSI standards at the time they were manufactured. Therefore, Crown contends it did not have actual knowledge of a defect in the braking system.
 STANDARD OF REVIEW *Page 7 {¶ 10} An appellate court reviews a grant of summary judgment de novo, independently and without deference to the trial court's decision.Adkins v. Chief Supermarket, 3d Dist. No. 11-06-07, 2007-Ohio-772, at ¶ 7, citing Conley-Slowinski v. Superior Spinning and Stamping Co.
(1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991; Hasenfratz v.Warnement, 3d Dist. No. 1-06-03, 2006-Ohio-2797, citing Lorain Nat'l.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. "A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met." Adkins, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Id, citing Civ.R. 56(C); Horton v. Harwick Chem. Corp.,73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * *."Adkins, at ¶ 8, citing Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7,663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. Jacobs, at 7. *Page 8 
 {¶ 11} The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St .3d 112, 116,526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ.R. 56(C). Mitseff, at 115, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citingHamlin v. McAlpin Co. (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781;Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * *." Dresher, at 294.
 ANALYSIS {¶ 12} Under Georgia law, failure to warn is a cause of action sounding in negligence. See Chrysler Corp. v. Batten (1994),264 Ga. 723, 724, 450 S.E.2d 208. While a cause of action based on the sale of a defective product requires the manufacturer to "exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses," a failure to warn claim requires "the manufacturer of a product which, to its actual or *Page 9 
constructive knowledge, involves danger to users, has a duty to give warning of such danger." Ford Motor Co. v. Stubblefield (1984),171 Ga.App. 331, 335, 319 S.E.2d 470, citing Greenway v. Peabody Internatl.Corp. (1982), 163 Ga.App. 698, 294 S.E.2d 541; Beam v. Omark Indus.
(1977), 143 Ga.App. 142, 145, 237 S.E.2d 607. A manufacturer's duty to warn of a danger may arise from its "post-sale knowledge acquired months, years, or even decades after the date of the first sale of the product." Batten, at 723, citing Mack Trucks, Inc. v. Conkle (1993),263 Ga. 539, 540, 436 S.E.2d 635; Owens-Illinois, Inc. v. Zenobia (1992),325 Md. 420, 601 A.2d 633; Cover v. Cohen (1984), 61 N.Y.2d 261,473 N.Y.S.2d 378, 461 N.E.2d 864.
 {¶ 13} Even if we assume that a forklift is required to stop within the ANSI standards once it is put into everyday use, and even if we assume that James could pursue his claim under either actual knowledge or constructive knowledge, any warning Crown could have provided would have not prevented James' injuries. The facts are undisputed that there are two ways in which an operator of a Crown forklift could stop it. The first is called "plugging." Plugging occurs when the forklift is moving in a forward direction. If the operator needs to stop, he will essentially shift the forklift from "drive" to "reverse," which causes the forklift to continue to roll forward for a certain distance before the tires begin to spin in the opposite direction, thereby causing the forklift to move in the opposite direction. *Page 10 
The other method is to use the actual brake. On the forklift Needham was operating on the morning of James' injury, the operator was required to lift his foot completely off of the pedal to engage the brake. If the operator lifted his foot without completely removing it from the pedal, the forklift would essentially be in "neutral" or a "limbo area" and continue to roll forward without any controls. However, once the operator lifts his foot off the pedal completely, the brake is engaged and will stop the forklift.
 {¶ 14} In James' deposition, he testified that Needham was probably "less than ten yards" (approximately 30 feet) away from him when he first noticed Needham's forklift. (Dep., White, James, Feb. 8, 2007, at 61). Needham testified that when he first observed James, he was between three and five feet away, though he could have been as far as six feet away. (Dep., Needham, Michael, Feb. 8, 2007, at 26, 38-39, 73). James testified that he saw Needham attempt to use the brake by lifting his leg and then he switched to plugging. (Dep., White, at 87-88). James estimated that Needham was less than seven yards away from him when he started plugging. (Id. at 89-90). Although James testified that he saw Needham's leg move on the brake, he did not testify that Needham lifted his foot completely off of the pedal. Needham testified that he definitely tried to plug first because he always plugs. (Dep., Needham, at 40-41, 67). Needham estimated that when he began to plug, he was approximately four feet away from James. (Id. at 24-25). *Page 11 
When he realized that he would not stop in time by plugging, Needham stated that he lifted his foot off the brake completely, but by the time he did so, he was approximately a "couple feet" away from James. (Id. at 25). Needham also stated that the only time his foot was completely off the brake pedal was when he simultaneously reached out and tried to push James away from the forklift.[2] (Id. at 93).
 {¶ 15} Although there are some discrepancies between James' and Needham's testimony, one fact is clear. Even though James saw Needham lift his leg to engage the brake, he could not state that Needham had lifted his foot completely off of the pedal so as to engage the brake. The only evidence identifying when the brake was engaged came from Needham, who testified that he was only a "couple of feet" away from James. By a "couple of feet," Needham necessarily meant less than four feet because he stated that he had tried to plug at approximately four feet and had then lifted his foot off the pedal. Furthermore, if Needham were able to reach out and touch James from the forklift, the only conclusion that can be drawn is that the forklift was less than four feet away from James.
 {¶ 16} James' expert witness, Dr. Avitan, testified that under the ANSI stopping distance test, Needham's forklift should have stopped within 6.09 feet to *Page 12 
6.49 feet, depending on whether the forklift was being operated with the forks in front or behind. (Dep., Avitan, Isaac, Feb. 8, 2007, at Ex. 5). Regardless of whether the forklift met the ANSI standard advocated by Avitan, by the time the brake was engaged (less than four feet away from James) it would have been impossible to prevent the collision, warning or no warning. Georgia has refused to impose a duty upon a manufacturer to make "`a machine accident proof or foolproof.' * * * Nor is there a duty on the manufacturer or seller to warn of obvious common dangers connected with the use of a product." Poppell v. Waters (1972),126 Ga.App. 385, 387-388, 190 S.E.2d 815, quoting Stovall Company v.Tate (1971), 124 Ga.App. 605, 610, 184 S.E.2d 834, 838, quoting fromCampo v. Scofield (1950), 301 N.Y. 468, 95 N.E.2d 802; citingJamieson v. Woodward Lothrop (D.C. Cir. 1957), 247 F.2d 23, 28. The harm in this case, which was objectively obvious to experienced forklift operators such as White and Needham, could not have been prevented even if Crown was under a duty to warn. See generally Moore v. ECI Mgt.
(2000), 246 Ga.App. 601, 606, 542 S.E.2d 115. See also (Dep. White). James has produced no evidence that the forklift was required by some authority to stop within a distance less than that required by the ANSI standards he advanced in the trial court. Therefore, any duty to warn, which Crown may have had in this case, is irrelevant, and any error alleged in the first and second assignments of error is non-prejudicial. *Page 13 
 {¶ 17} Having found no genuine issues of material fact; that the movant is entitled to judgment as a matter of law; and that reasonable minds can reach only one conclusion, which is adverse to the non-movant, we hold that summary judgment in favor of Crown was appropriate. The sole assignment of error is overruled.
 {¶ 18} The judgment of the Auglaize County Common Pleas Court is affirmed.
Judgment affirmed.
 ROGERS, P.J., and SHAW, J., concur.
[1] The forklift Needham was operating was manufactured in 1993 and purchased by Atlas Cold Storage's predecessor company either in 1993 or shortly thereafter.
[2] Needham's testimony was clear that he definitely touched James when he reached out to push him. *Page 1