## A10A2019. KELLEY et al. v. HEDWIN CORPORATION.
### (707 SE2d 895)

DOYLE, Judge.

In this products liability suit, Ernie and Donna Kelley appeal from the grant of summary judgment to Hedwin Corporation. The Kelleys' suit is based on injuries sustained by Ernie, a hospital employee, when he cleaned up formaldehyde spilled by a nurse from a five-gallon plastic storage container originally manufactured by Hedwin Corporation. For the reasons that follow, we affirm the grant of summary judgment to Hedwin.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

The record shows that Ernie, a clinical engineer at a hospital, was at home one evening when he received an emergency call from hospital staff informing him that a chemical spill had occurred at the hospital. He replied that the hospital's "Environmental Services" personnel should clean up the spill, and the nurse explained that they had refused to do so. Ernie told the nurse he would come to the hospital, and upon arrival, he observed a large spill of liquid on the floor. He could smell strong fumes, and before he began cleaning, he was told that the spill was embalming fluid containing formaldehyde.

---

[1] (Citations omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Ernie then helped other staff clean up the spill with mops and buckets. He did not wear a mask, and he experienced coughing and restricted breathing as he cleaned.

The nurse who spilled the liquid deposed without dispute that the liquid came from a five-gallon collapsible plastic cube regularly used at the hospital to store and dispense embalming fluid. The cube had a mouth on one side, such that a full cube could be rotated up to substitute a spigot for the cap with which it was shipped (with the liquid not reaching the top of the cube), and the cube could be rotated down to dispense the liquid from the spigot. The nurse testified that the spigot was apparently not fastened tightly, and as soon as she touched the spigot, it fell off, and liquid poured rapidly out of the open mouth of the cube. The liquid spilled on the nurse, and someone retrieved the Material Safety Data Sheet to determine what hazards it presented. Based on what she learned, the nurse went home to shower and change clothes. The nurse then returned to work and finished her shift.

It is undisputed that Hedwin manufactured the empty container only, and it did not sell formaldehyde, fill the container with formaldehyde, package or label the filled container, nor sell the formaldehyde-filled container to the hospital. Furthermore, it did not manufacture or install the spigot on the container in question. The filled container was provided to the hospital by a separate entity, Cardinal Health.

The Kelleys sued Hedwin and Cardinal Health, alleging personal injury and loss of consortium claims based on negligent manufacturing, negligent design, and failure to warn. The trial court granted summary judgment to Hedwin, giving rise to this appeal.[2]

On appeal, the Kelleys argue that the trial court improperly granted summary judgment (1) because Hedwin failed to adequately warn users that the gravity-fed spigot could cause a large spill if uncapped, and (2) because the container's gravity-fed design was defective.[3] We disagree.

---

[2] Cardinal Health is not a party to this appeal. We further note that the Kelleys' appellate brief makes only a truncated argument, seeks to supplement the record, and requests "a reasonable amount of time to review the record and complete their Appeal." Such a compound filing is not authorized under this Court's rules. See Court of Appeals Rule 41 (b). Further, after the record was supplemented (consistent with the Kelleys' request) pursuant to Hedwin's proper motion, the Kelleys filed no motion nor a reply brief. We exercise our discretion to address the merits of the arguments made in the Kelleys' appellate brief as best we can discern them.

[3] The Kelleys do not argue on appeal that the spilled container itself was flawed in some way making it different from others of the same design manufactured by Hedwin. Therefore they do not assert a negligent manufacturing argument. See, e.g., *Banks v. ICI Americas*, 264 Ga. 732, 733 (1) (450 SE2d 671) (1994) (in a negligent manufacturing case "it is assumed that the design of the product is safe and had the product been manufactured in accordance with

1. *Failure to warn*. With respect to the failure to warn argument, "there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known."[4] It is both obvious and generally known that a poorly-capped container placed on its side will spill large amounts of liquid regardless of design, and it is undisputed that the spill occurred because a hospital employee failed to properly replace or install the spigot. Thus, employees were or should have been aware of the risk of a spill about which Ernie claims they should have been warned.[5] The Kelleys' own expert opined that the dispensing method used here is "common," and the fact that it could leak if the cap is poorly installed is not "new." Therefore, in light of the circumstances of this case, we conclude that the Kelleys' failure to warn argument fails as a matter of law.[6]

2. *Negligent design*. With respect to a negligent design argument, the burden on the defendant at summary judgment is "to show plainly and indisputably an absence of any evidence that a product *as designed* is defective."[7] The presence of a design defect is determined by engaging in a "balancing test whereby the risks inherent in a product design are weighed against the utility or benefit derived from the product" as designed.[8] Although such questions are normally the province of the jury, the test does not foreclose judgment as a matter of law in cases where the absence of a design flaw is plainly and indisputably shown by the evidence.[9]

Georgia courts employ the risk-utility test according to the following non-exhaustive list of factors:

> the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of

---

the design it would have been safe for consumer use").

[4] (Punctuation omitted.) *Moore v. ECI Mgmt.*, 246 Ga. App. 601, 606 (2) (542 SE2d 115) (2000) (danger of electrocution from miswiring an electrical appliance was both open and obvious to an experienced installer). See also *Daniels v. Bucyrus-Erie Corp.*, 237 Ga. App. 828, 829 (516 SE2d 848) (1999) (discussing application of the open and obvious rule in the context of a failure to warn claim); *Bodymasters Sports Indus. v. Wimberley*, 232 Ga. App. 170, 174-175 (2) (501 SE2d 556) (1998) (because plaintiff was aware of the danger she claims she should have been warned against, the failure to post signs warning of such danger could not have been the proximate cause of her injury).

[5] See *Daniels*, 237 Ga. App. at 830 (warning not effective if the user is already aware of risk and a bystander cannot allege failure to warn if he ignored purported means of warning).

[6] See *Moore*, 246 Ga. App. at 606 (2).

[7] (Emphasis omitted and supplied.) *Dean v. Toyota Indus. Equip. Mfg.*, 246 Ga. App. 255, 260 (3) (540 SE2d 233) (2000).

[8] *Banks*, 264 Ga. at 734 (1).

[9] See *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 646 (522 SE2d 467) (1999).

the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance. We note that a manufacturer's proof of compliance with industry-wide practices, state of the art, or federal regulations does not eliminate conclusively its liability for its design of allegedly defective products.

Alternative safe design factors include: the feasibility of an alternative design; the availability of an effective substitute for the product which meets the same need but is safer; the financial cost of the improved design; and the adverse effects from the alternative.

In regard to the benefits aspect of the balancing test, factors that could be considered include the appearance and aesthetic attractiveness of the product; its utility for multiple uses; the convenience and extent of its use, especially in light of the period of time it could be used without harm resulting from the product; and the collateral safety of a feature other than the one that harmed the plaintiff.[10]

Here, the Kelleys provided an affidavit from an expert who opined that a container used to dispense a hazardous liquid should not be of a design where there is a "potential to spill all the contents in a very short time if the valve were to come off." Aside from failure to warn issues, he recommended that: (1) containers designed for use in the manual dispensing of toxic liquid should be designed so that all connections are above the normal maximum liquid level; (2) a means should be provided to prevent the flow of toxic liquid by siphon flow; and (3) manual dispensing should be done with a hand pump installed on an upright container.

Nevertheless, the expert's opinion fails to address the fact that the containers are specifically designed to be modular and useful for multiple purposes — allowing the end user to decide how to fill the container and how to dispense the liquid chosen. The container as designed accommodates a variety of filling and dispensing methods,

---

[10] *Banks*, 264 Ga. at 736-737 (1), n. 6.

*including the hand pump method recommended by the Kelleys' expert.* The record shows that the dispensing method here, a spigot, was not chosen, designed, or manufactured by Hedwin. Nor did Hedwin manufacture, design, or label the outer cardboard packaging of the formaldehyde product shipped by a third party and dispensed by the hospital.[11] Thus, Hedwin's design was appropriate for pairing with the hand pump recommended for toxic chemicals, and the design of the container itself, as manufactured by Hedwin, was not defective.

Moreover, the alleged risk associated with this modular, universal design — that an improperly capped container on its side will readily spill its contents — is an obvious danger of which any hospital employee should have been aware and could avoid.[12] Indeed, as noted above, the Kelleys' own expert opined that the method of dispensing that occurred here "is common," and the fact that gravity will empty an open container placed on its side is "not a new revelation."

The record contains other evidence of the utility of the design, which, among other things, was state of the art when designed, could be packaged in a variety of boxes, minimized the costs of shipping and storing empty containers, avoided "glugs" that can cause spills when dispensing, promoted total emptying thereby reducing waste, and complied with government packaging and shipping regulations. Based on the record before us, and in light of the obvious and avoidable nature of the risk from spilling, we conclude that the trial court did not err in granting summary judgment to Hedwin on the negligent design claim.[13]

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 17, 2011.

*J. Hugh Gordon*, for appellants.

---

[11] The Kelleys do not dispute that the box label did contain warnings about the hazards of formaldehyde.

[12] See *Moore*, 246 Ga. App. at 605.

[13] See id. at 604 (1). Although the Kelleys do not specifically argue a strict liability theory on appeal, we note that "[t]he sine qua non of a products liability claim, regardless of whether the plaintiff proceeds under a theory of strict liability or negligence, is a defect in the product." *Boswell v. OHD Corp.*, 292 Ga. App. 234, 235 (664 SE2d 262) (2008). Based on our conclusions herein and the record in this case, a strict liability argument does not preclude summary judgment in this case. Compare *Owens v. GMC*, 272 Ga. App. 842, 846 (2) (613 SE2d 651) (2005) (plaintiff alleging strict liability "must show that the device did not operate as intended and this was the proximate cause of his injuries.").

*Coleman Talley, Edward F. Preston*, for appellee.