A00A1582. DEAN v. TOYOTA INDUSTRIAL EQUIPMENT MANUFACTURING, INC.
(540 SE2d 233)

JOHNSON, Chief Judge.

Johnny Dean was injured when a forklift backed into him as he exited a storage room at work. He sued Toyota Industrial Equipment Manufacturing, Inc. ("Toyota Industrial"), alleging that it should be held strictly liable for not installing on the forklift, as standard equipment, an alarm to warn people when the forklift was backing up. Toyota Industrial moved for summary judgment, but the trial court denied the motion as being filed too near the trial date.

The case was tried by a jury. After deliberating several days, the jury was deadlocked, and the trial court declared a mistrial. Toyota Industrial again moved for summary judgment, claiming it did not

---

[10] *Dept. of Revenue v. Sledge,* 241 Ga. App. 833-834 (1) (528 SE2d 260) (2000).
[11] *Boyles v. Steine,* 224 Ga. 392, 395 (162 SE2d 324) (1968).

design the forklift; Dean's employer could have installed an optional warning device on the forklift; Dean knew the forklift had no warning device; and he was aware of the dangers involved, and yet he walked into the path of the forklift. The trial court granted this motion. Dean appeals from the grant of summary judgment to Toyota Industrial.

1. Dean argues that the trial court erred in finding that Toyota Industrial is a mere seller of forklifts, when there is evidence indicating that Toyota Industrial is, instead, a manufacturer. The distinction is important because an action for strict liability can be maintained against a manufacturer, but not against a mere seller of a product.[1]

OCGA § 51-1-11 (b) (1) provides, in relevant part, that the manufacturer of personal property is liable in tort to any person who may reasonably be affected by the property and who is injured because the property when sold was not merchantable and reasonably suited to the use intended. In a product liability action based in whole or in part on strict liability in tort, such as this case, a product seller is not a manufacturer as provided in OCGA § 51-1-11 and is not liable as such.[2] A "product seller" is a person who, inter alia, sells, distributes, or assembles a product pursuant to a manufacturer's plan, intention, design, specifications, or formulation.[3]

In this case, it is undisputed that Toyota Industrial assembled the forklift. It is not clear from the evidence presented whether Toyota Industrial's role in assembling the forklift rendered it a manufacturer or a mere product seller within the meaning of the strict liability statute.

The vice-president of engineering and quality assurance for Toyota Industrial testified that Toyota Industrial assembles the forklifts based on designs by "Toyota Automatic Lift" or "Toyota Automatic Loom Works."[4] The witness testified that Toyota Industrial is not involved in the design, development, or testing of the product and that it "build[s] the products per specifications given to us." He did not explain, or at least Toyota Industrial has not shown us where in the record he did so explain, the relationship between Toyota Automatic Lift or Toyota Automatic Loom Works and Toyota Industrial and whether they are separate legal entities.

A salesman for Atlanta Forklift, Inc., the dealership which sold the forklift to Dean's employer, testified that he asked the buyer dur-

---

[1] See *Ream Tool Co. v. Newton*, 209 Ga. App. 226, 227 (3) (a) (433 SE2d 67) (1993).

[2] OCGA § 51-1-11.1 (b).

[3] OCGA § 51-1-11.1 (a).

[4] The trial transcript shows the former name. The deposition transcript gives the latter name.

ing the sale whether he wanted to have an optional backup alarm installed on the forklift, and that he declined the equipment. The salesperson prepared the specifications sheet for the forklift requested by the employer and sent the sheet to Toyota Industrial for product assembly.

The record before us presents an issue which we have not seen in other product liability cases. On the one hand, it is undisputed that Toyota Industrial assembles the parts and builds the forklifts. It is also undisputed that Toyota Industrial installs the warning devices when requested and paid for by customers. The record contains no evidence from or about the purported designer of the forklift, which shares the "Toyota" name.

Interestingly, at no time before the jury trial did Toyota Industrial challenge Dean's allegation that it was the forklift's manufacturer. Indeed, Toyota Industrial did not include the question of whether it was the manufacturer as an issue in the consolidated pretrial order and expressly stated in the order that it manufactured the forklift. And throughout its pleadings and in depositions, as well as in its name, Toyota Industrial has referred to itself as a manufacturer.

We are not convinced that Toyota Industrial has shown that it is a mere product seller as contemplated by the statute. A defendant can be both a manufacturer and a seller simultaneously; in such a case, it is not entitled to the protections afforded a mere product seller.[5]

We point out that in those cases in which we have held that the defendant was a mere seller rather than a manufacturer, the defendant did not actually assemble the product.[6] In *Alltrade v. McDonald*, we stated that for strict liability purposes, manufacturers are "those entities that have an active role in the production, design, *or assembly* of products."[7] We stated further that the legislature did not intend "manufacturers" to include those entities "that had no real role in the creation of products," such as those who merely label a product as their own.[8] Unlike the defendants in those cases, Toyota Industrial had an active role in the production or assembly of the

---

[5] OCGA § 51-1-11.1 (a), (b).

[6] See, e.g., *Thomasson v. Rich Products Corp.*, 232 Ga. App. 424 (502 SE2d 289) (1998) (defendant was product seller when bagels sold under its name were baked by another company, shipped to it in sealed containers, reshipped without repackaging, and defendant did not participate in the manufacturing process); *Alltrade v. McDonald*, 213 Ga. App. 758 (445 SE2d 856) (1994) (defendant was a mere seller where its name was stamped on ladder built by another company, and defendant did not assist in design, testing, inspecting, or assembly); *Ream Tool Co.*, supra (defendant was a mere seller, not a manufacturer, where it acted as a middleman in procuring a tool and selling it to plaintiff).

[7] (Citation and punctuation omitted; emphasis supplied.) 213 Ga. App. at 760.

[8] (Citation and punctuation omitted.) Id.

product. In fact, it alone assembled the forklift.

As movant on summary judgment, Toyota Industrial had the burden of showing the absence of any genuine issue of material fact. Considering its role as assembler and the lack of clarity as to which Toyota entity designed the forklifts, it has not met its burden of showing that it is a mere product seller as a matter of law. The trial court erred in granting summary judgment to Toyota Industrial based on its status as a mere product seller.

2. Dean contends the trial court erred in holding that summary judgment was proper because the evidence showed that Dean assumed the risk of injury. We agree with Dean.

In support of its motion for summary judgment, Toyota Industrial points to evidence that Dean knew his employer's forklifts had no backup alarms, knew they were dangerous without the alarms, and had warned other employees to watch for forklift traffic. In rebuttal, Dean points to evidence that he "had no idea [the forklift] was back there," and that no forklifts had been operating in the area that day. Dean testified that

> [i]f I just knew he was back there, just knew he was back there, I would've never stepped out behind that wall. And if they — yeah, I might of should have looked. But if I had known — when I went back there, was no one back there. Just me and the crane operator. I had no idea, you know, [the forklift driver] had came through this door. . . . [W]hen [the forklift driver] came in there that day, he was making the very first run to start moving this stuff out to the storage area. That was his very first run.

Whether a party assumed the risk of injury is a jury question that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable, and undisputed evidence.[9] In order to assume the risk, the injured party must not only know of the facts which create the danger, he must comprehend and appreciate the nature of the danger he confronts.[10]

This is not such a case upon which assumption of the risk has been established by plain, palpable, and undisputed evidence.[11] "The facts here do not measure up to a classic case of assumption of the risk such as trying to beat a rapidly approaching train across the

---

[9] *Rubin v. Cello Corp.*, 235 Ga. App. 250, 252 (1) (b) (510 SE2d 541) (1998).

[10] *Bodymasters Sports Indus. v. Wimberley*, 232 Ga. App. 170, 174 (1) (c) (501 SE2d 556) (1998).

[11] Id.

crossing or participating in a drag race."[12] We cannot say, as a matter of law, that Dean voluntarily exposed himself to a known risk or that he deliberately chose an obviously perilous course of conduct.[13] The evidence presented a case for the jury to decide whether Dean actually appreciated the specific risk and assumed it.[14]

3. We agree with Dean that the trial court erred in granting summary judgment based on a "risk-utility" analysis. In its order, the trial court stated that it based its decision in part on an analysis of the risk-utility factors set out in *Banks v. ICI Americas,*[15] and *Ogletree v. Navistar Intl. Transp. Corp. ("Ogletree VI")*.[16]

Under the risk-utility analysis, the risks inherent in a product design are weighed against the utility or benefit derived from the product.[17] When a jury decides that the risk of harm outweighs the utility of a particular design, it is saying that in choosing the particular design, the manufacturer exposed the consumer to greater risk of danger than it should have.[18] In making the risk-utility analysis, the factors to be considered include: the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger, and the user's ability to avoid danger; the state of the art at the time the product is manufactured; the manufacturer's ability to eliminate the danger without impairing the product's usefulness or making it too expensive; and the feasibility of spreading the loss in the price or by purchasing insurance.[19] A manufacturer's proof of compliance with federal regulations is also a factor to be considered.[20] These factors are not exhaustive and do not apply in all cases.[21] In general, and as noted in the *Banks* opinion, the weighing of the risk-utility factors is to be done *by the trier of fact.*[22]

In this case, an engineer testified that a backup alarm is needed on forklifts "when you have a mixture of forklifts and people sharing the same area"; that, based on where the accident occurred, Dean

---

[12] (Citation and punctuation omitted.) *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111, 114 (1) (460 SE2d 800) (1995).

[13] Id. at 113.

[14] See *Bodymasters Sports Indus.*, supra at 173-174 (1).

[15] 264 Ga. 732 (450 SE2d 671) (1994).

[16] 236 Ga. App. 89 (511 SE2d 204), rev'd, 271 Ga. 644 (522 SE2d 467) (1999) (*"Ogletree VII"*).

[17] *Banks*, supra at 734 (1).

[18] Id.

[19] Id. at 736-737, n. 6.

[20] See id.

[21] Id. at 736 (1).

[22] Id. at 734-735 (1); *Ogletree VII*, 271 Ga. at 646.

would have heard the alarm and had an opportunity to avoid being injured; that the alarms cost between $30 and $100 on a forklift worth about $20,000; and that such alarms are standard on forklifts manufactured by Nissan. The expert concluded that backup alarms should be standard equipment on forklifts.

There was also evidence supporting Toyota Industrial's position that the risks of the forklift as manufactured did not outweigh the benefits. However, it was not for the trial court to resolve the facts or reconcile the issues.[23] As the Supreme Court held in *Ogletree VII*,[24] a product's risks and benefits will rarely be determined as a matter of law when any of the *Banks* factors is disputed. Indeed, by adopting the risk-utility analysis, Georgia has actually increased the burden of a defendant, in seeking a judgment as a matter of law, to show plainly and indisputably an absence of *any* evidence that a product as designed is defective.[25] Where there is some evidence that the risk caused by not having an alarm outweighed the utility of the forklift in not having an alarm, the issue of negligent design cannot be decided as a matter of law.[26] Here, there was such evidence. Thus, the trial court erred in entering summary judgment in favor of Toyota Industrial.

*Judgment reversed and case remanded. Smith, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 4, 2000.

*Charles A. Gower, James F. Myers III*, for appellant.
*Wood, Odom & Edge, Arthur B. Edge IV*, for appellee.

---

[23] See *Adams v. Sears, Roebuck & Co.*, 227 Ga. App. 695, 696-697 (1) (490 SE2d 150) (1997).
[24] *Ogletree VII*, 271 Ga. at 645.
[25] Id.
[26] Id.
[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).