**FIFTH DIVISION**
**ELLINGTON, P. J.,**
**MCFADDEN, P. J. and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 30, 2018**

# In the Court of Appeals of Georgia

A18A1032.  MARY   SHEFFIELD   et   al.   v.   CONAIR CORPORATION.

RICKMAN, Judge.

In this product liability action, Mary Sheffield and her mother, SuVanne Fuller, (collectively, "Appellants") sued Conair Corporation, alleging that a Conair model heating pad used by Sheffield caught her mattress on fire and ultimately burned their house to the ground. The complaint alleged that the heating pad contained a design defect and asserted claims under the theories of strict liability, negligence, and failure to warn. Conair filed a motion for summary judgment, which the trial court granted in a summary order. Appellants contend that the trial court erred because genuine issues of material fact exist that preclude summary judgment. For the reasons that follow, we affirm.

"We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Courtland Hotel, LLC v. Salzer*, 330 Ga.App. 264, 264 (767 SE2d 750) (2014). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9–11–56 (c).

A defendant seeking summary judgment "may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). Thus, "a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case." (Citation and punctuation omitted.) Id. When this is done, the plaintiff "cannot rest on its pleadings, but rather must point to specific

evidence giving rise to a triable issue." (Citation omitted.) Id.; see also OCGA § 9-11-56(e); *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So construed, the evidence shows that Appellants lived together in a rental home in Effingham County. In September 2013, Sheffield purchased a Conair Model HP01RB heating pad[1] from a retail store in Georgia. On the evening of September 30, 2013, she was using the heating pad to relieve pain in her neck when she fell asleep. She had been asleep for approximately one to one-in-a-half hours when Fuller came to check on her and noticed a strange odor. After pulling back the sheets, Fuller saw that the heating pad had burned into the sheets and mattress and by the time Sheffield

---

[1] The complaint alleges that Conair manufactured the heating pad at issue that otherwise carries its name, and certain deposition testimony of Conair's own expert seems to support that allegation. Conair nevertheless contends that it did not manufacture the product and points to an affidavit by the same expert to support that assertion. The expert affidavit, however, does not deny that Conair manufactured the subject heating pad; rather, it states simply that Conair "distributed" the product line and that the heating pad was manufactured in China. The issue of who manufactures a product for the purposes of a product liability action is not always a straightforward one. See *generally Buchan v. Lawrence Metal Products*, 270 Ga. App. 517, 520-521 (2) (607 SE2d 153) (2004); *Dean v. Toyota Industrial Equipment Mfg.*, 246 Ga. App. 255, 256-258 (1) (540 SE2d 233) (2000). Despite its assertion to the contrary, Conair had the burden on summary judgement to prove the absence of any genuine issue of material fact on the question of whether it manufactured the heating pad involved in this case. See *Buchan*, 270 Ga. App. at 521 (2); *Dean*, 246 Ga. App. at 258 (1). It failed to meet that burden on the record before this Court.

3

awoke and exited the bed, the mattress and adjoining curtains were in flames. Appellants ultimately lost the home, its contents, and several pets to the fire.

The Effingham County Fire Department responded to the scene and conducted an investigation. After speaking to Sheffield, observing the way the housing structure collapsed, assessing the burn patterns to establish the fire's point of origin, and determining that the breaker had been tripped for the receptacle outlet powering only the heating pad, the Fire Chief opined that the fire originated in the area of the heating pad.[2]

Appellants sued, asserting that Conair manufactured and sold the subject heating pad in a defective and unreasonably dangerous condition in that it reached such high temperatures so as to ignite Sheffield's mattress; lacked a safety mechanism by which it could be set to varying degrees of temperature; and lacked any safety

---

[2] Conair contends that the Fire Chief's opinion regarding the origin of the fire is inadmissible because he was not qualified as an expert and otherwise lacked the credentials to give an opinion regarding the existence of a defect in the heating pad. The Fire Chief, however, gave no opinion as to whether the heating pad failed or was defective and indeed, expressly stated that he could not; rather, the Fire Chief's testimony was limited to his opinion that the origin of the fire appeared to be in area of the heating pad. We will assume without deciding that the Fire Chief, who responded to and investigated the fire scene, was qualified to give his opinion as to that issue. See generally *Thrif-Mart v. Commercial Union Assur. Co.*, 154 Ga. App. 344, 347 (5) (268 SE2d 397) (1980).

mechanism by which it would cool or turn off should the temperature reach a dangerously high level. They asserted claims of defective design under the theories of strict liability, negligence, and failure to warn, and sought both actual and punitive damages.

Conair moved for summary judgment on the claims. In support of its motion, Conair presented the testimony of its director of engineering investigations, who inspected the remains of the heating pad and summarily opined that the fire was not caused by the hearing pad; "the heating pad suffered from no defect in design, workmanship, or function"; Sheffield "misused" the heating pad by falling asleep; and "[t]here was nothing to suggest that the . . . heating pad overheated and ignited." Conair further asserted that due to Sheffield's "misuse" of the heating pad, she failed to establish causation, even assuming that the fire originated at the heating pad.

The trial court granted summary judgment to Conair in a summary order. This appeal follows.

1. Under Georgia law, "a manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses." *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994); see also *Certainteed Corp. v. Fletcher*, 300 Ga. 327, 329 (1) (794

5

SE2d 641) (2016). Manufacturers can be held strictly liable for injuries caused by a product if the product "when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold [was] the proximate cause of the injury sustained." OCGA § 51-1-11 (b) (1). An injured party may show that the product was "not merchantable" by using three general categories of product defects: manufacturing defects, design defects, and marketing/packaging defects. See *Banks v. ICI Americas,* 264 Ga. 732, 733 (1) (450 SE2d 671) (1994).

Unlike cases involving allegations of a manufacturing defect, a design defect case does not allege that the product in question was uniquely defective, but instead calls into question an entire product line. *Banks*, 264 Ga. at 733-734 (1). Consequently, a design defect case requires the court to supply the standard for defectiveness. Id. at 733-734 (1). To do so, our Supreme Court adopted the "risk-utility analysis," which requires the trier of fact to "balanc[e] the risks inherent in a product design against the utility of the product so designed" to determine whether a design is defective. Id at. 735 (1). The Court explained:

> [t]his risk-utility analysis incorporates the concept of "reasonableness,"
> i.e., whether the manufacturer acted reasonably in choosing a particular
> product design, given the probability and seriousness of the risk posed
> by the design, the usefulness of the product in that condition, and the

6

burden on the manufacturer to take the necessary steps to eliminate the risk.

Id. at 734 (1). The non-exhaustive list of factors to be considered when engaging in this analysis include the following:

> the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger, and the user's ability to avoid danger; the state of the art at the time the product is manufactured; the manufacturer's ability to eliminate the danger without impairing the product's usefulness or making it too expensive; and the feasibility of spreading the loss in the price or by purchasing insurance.

(Citations omitted.) *Dean v. Toyota Industrial Equipment Mfg.,* 246 Ga. App. 255, 259 (3) (540 SE2d 233) (2000); see also *Banks*, 264 Ga. at 733-734 (1).

Because application of the risk-utility analysis incorporates the concept of "reasonableness," the *Banks* Court recognized that "[c]onceptually and analytically, [its] approach bespeaks negligence." (Citation and punctuation omitted.) *Banks*, 264 Ga. at 733-734 (1). Thus, in design defect cases, "there is no significant distinction between [strict liability] and [negligence] for purposes of the risk-utility analysis."

*Jones v. NordicTrack, Inc.*, 274 Ga. 115, 117 n.5 (550 SE2d 101) (2001); see

*Ogletree v. Navistar Intern. Transp. Corp.*, 269 Ga. 443, 445 (500 SE2d 570) (1998).

We will, therefore, consider the claims of strict liability and negligence together.

(a) *The Risk-Utility Analysis*. Appellants allege that the subject heating pad contained a defect in that the design allowed it to reach such high temperatures as to ignite a mattress, and it otherwise lacked safety mechanisms by which its temperature could be varied and/or it would automatically power off if it reached a dangerously high temperature. Apart from the event of the fire, however, Appellants failed to come forth with any evidence from which the *Banks* factors could be analyzed. They offered no evidence about the heating pad's operating temperature, the amount of heat necessary to ignite sheets or other objects, or the likelihood or the avoidability of that danger. Further, although they alleged that the heating pad should have contained a safety feature, they presented no evidence regarding the effectiveness or the cost of adding such a feature. And they failed to present any expert testimony on the issue of defect.

In order to fulfill its basic function, a heating pad necessarily contains a heating element, "which, by its very nature, is capable of producing a dangerous condition." *Bunch v. Maytag Corp.*, 211 Ga. App. 546, 547 (1) (439 SE2d 676) (1993). But even

8

construing the evidence in the light most favorable to the Appellants, the record is devoid of any evidence that would give rise to a triable issue that the fire, even if caused by the heating pad, was the result of an improper or defective design. See id.; see generally *Sheats v. Kroger Co.*, 336 Ga. App. 307, 312 (784 SE2d 442) (2016), *U.S. Fidelity & Guar. Co. v. J. I. Case Co.*, 209 Ga. App. 61, 63-64 (3) (432 SE2d 654) (1993). That fact alone is fatal to Appellants' claims.

(b) *Proximate Causation*. Fundamental to any design defect claim is the issue of proximate causation. See OCGA § 51-1-11 (b) (1). Appellants had the burden of pointing to specific evidence giving rise to a triable issue of fact regarding the causal connection between Conair's alleged design defect and the fire that resulted in their injuries. The record evidence, however, allows for only an inference that the heating pad caused the fire, and that inference does not extend to the cause being the result of a design defect.[3] Inferences "must be based on probabilities rather than mere

---

[3] Although Sheffield and Fuller attempt to rely on documents purporting to reflect complaints from other consumers to show evidence of a design defect, they failed to lay an evidentiary foundation for the admission of the documents. Regardless, they failed to show that "the other incidents [were] substantially similar to the incident at issue." *Stovall v. DaimlerChrysler Motors Corp.*, 270 Ga. App. 791, 793 (1) (608 SE2d 245) (2004) ("Before admitting evidence of other incidents . . . the proponent of the evidence must prove, and the trial court must determine, that the other incidents are substantially similar to the incident at issue . . . [a]nd the showing of substantial similarity must include a showing of similarity as to causation.")

9

possibilities." *Ogletree v. Navistar Intern. Transp. Corp.*, 245 Ga. App. 1, 6-7 (1) (535 SE2d 545) (2000). Indeed, "[when] a plaintiff seeks to carry its burden of proof by inference, that inference must not only tend in some proximate degree to establish the conclusion, but render less probable all inconsistent conclusions." *Bunch*, 211 Ga. App. at 548 (1); see also *Ogletree*, 245 Ga. App. at 7 (1).

When asked directly whether it was more likely than not that a failure of the heating pad caused the ignition, the Fire Chief responded that he could not say. Under these circumstances, the evidence is insufficient as a matter of law to establish the causal connection between the design of Conair's heating pad and the fire resulting in Appellants' damages. See *Ogletree*, 245 Ga. App. at 7 (1) (recognizing that "[an] inference . . . founded on speculation . . . is without evidentiary value"); see *also Bunch*, 211 Ga. App. at 548 (1). It follows that the trial court did not err in granting summary judgment to Conair on their claims based upon the theories of strict liability and negligence for a defect in the design of the heating pad. See *Ogletree*, 245 Ga. App. at 6 (1); *Bunch*, 211 Ga. App. at 548 (1). Compare *Firestone Tire & Rubber Co. v. Hall*, 152 Ga. App. 560, 562-563 (1) (263 SE2d 449) (1979) (holding that the evidence authorized an inference that manufacturer's product was defective when

(citations omitted).

10

there was no other reasonable explanation for the occurrence resulting in plaintiff's damages).

2. Appellants also contend that Conair "failed to warn [them] that the subject heating pad was in a defective condition and unreasonably dangerous." See OCGA § 51-1-11 (c) (recognizing a manufacturer's "duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer"); see also *Chrysler Corp.*, 264 Ga. at 724 (1) ("In failure to warn cases, the duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product."). As set forth in Division 1, however, Appellants failed to set forth any evidence sufficient to create a genuine issue of fact as to the existence of a defective or unreasonably safe condition with regard to the heating pad. Consequently, the trial court did not err in granting summary judgment to Conair on this claim as well. See generally *Orkin Exterminating Co., Inc. v. Dawn Food Products*, 186 Ga. App. 201, 203 (366 S.E.2d 792) (1988).

*Judgment affirmed. Ellington, P. J., and McFadden, P. J., concur.*