**FOURTH DIVISION
DILLARD, P. J.,
RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 3, 2020**

# In the Court of Appeals of Georgia

A20A0038. MORRIS v. REAL ESTATE EXPERT ADVISORS, LLC et al.

DILLARD, Presiding Judge.

Whitney Morris appeals from the trial court's grant of summary judgment to Tracy Cousineau and Real Estate Expert Advisors, LLC on his claims for personal injuries sustained when he was shot by homeowner Belinda Brooks[1] as he entered her home to take photographs on behalf of REEA and Cousineau. Morris argues the trial court erred in granting summary judgment to the defendants when the trial court (1) relied on the *defendants'* admissions, which were not binding on Morris; (2) concluded that the defendants owed no duty to Morris and thus did not proximately cause his injuries; and (3) alternatively, abused its discretion by refusing Morris's

---

[1] Brooks is also a defendant, but she is not a party to this appeal.

request to extend the time to respond to the defendants' motion for summary judgment. For the reasons set forth *infra*, we reverse.[2]

Viewed in the light most favorable to Morris (*i.e.*, the nonmoving party),[3] the record shows that Brooks hired REEA to sell her Winston, Georgia home. Cousineau, a real estate agent, is the owner and manager of REEA. REEA told Brooks that when it was time for her home to be photographed, she would be contacted to set up an appointment; but that did not happen.

REEA hired Advantage Home Tours to photograph Brooks's home for her real-estate listing and submitted a work order to the Advantage Homes website. Thereafter, an Advantage Homes employee corresponded with a REEA employee to schedule a photography appointment. Advantage Homes confirmed that Brooks's home would be photographed at 9:00 a.m. on February 2, 2018. In turn, Advantage Homes scheduled Morris, a freelance real-estate photographer, for the job.

---

[2] Oral argument was held in this case on December 3, 2019, and is archived on the Court's website. *See* Court of Appeals of Georgia, Oral Argument, Case No. A20A0038 (Dec. 3, 2019), *available at* https://www.gaappeals.us/oav/A20A0038.php

[3] *See, e.g.*, *McCoy v. W. Bldg. Materials of Ga., Inc.*, 232 Ga. App. 620, 620 (502 SE2d 559) (1998) ("[W]e view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (punctuation omitted)).

According to Morris, when he photographs a home, the way he enters the house depends "first and foremost" on the instructions in his work order. These work orders ask real-estate agents to submit all pertinent information to Advantage Home Tours, and the company then passes that information along to the photographer. And according to Morris, if the instructions say to call the homeowner, knock on the door, or ring the doorbell, he follows those instructions. So, generally, the work order tells Morris everything that he needs to know for a photo shoot.

Here, REEA placed an electronic lockbox on the door to Brooks's home, and the box contained a key to the house. This type of lockbox is accessible via an electronic key or cell-phone application, which allows the real-estate agent to remotely control who accesses the home and when. The work order for Brooks's home included the code to her lockbox, but did not include any instructions to call the homeowner or agent before entering or any instructions related to a security alarm.

Morris arrived at Brooks's home just before 9:00 a.m. and took photographs of the house's exterior. He looked through the windows of the home and believed it appeared staged but unoccupied by an inhabitant. Then, shortly before 9:00 a.m., Morris used the application on his phone to open the lockbox. And at 9:00 a.m. sharp, he retrieved the key and opened the front door. But as the door swung open, a security

3

alarm began to sound loudly. Surprised, Morris immediately looked back in the lockbox for a piece of paper with the security code. He found nothing inside. Morris then entered the home to look for the keypad and any paper containing the security code , but shortly thereafter he was shot from behind by Brooks.

Brooks expected that her real-estate agent would notify her before a photographer came to her home, but that never happened. So, when Morris entered the home, Brooks believed that he was an intruder, retrieved her firearm, and fired in his direction. She missed Morris the first time; but shot again, striking him in the buttocks and causing serious injuries.

Morris later filed suit against Brooks, REEA, and Cousineau, alleging that Cousineau and REEA "had a duty to act as a reasonable person would under the circumstances" and "take reasonable and ordinary steps to ensure [Morris] would be safe at Brooks'[s] home." The complaint further alleged that REEA and Cousineau breached their duty of care by failing to inform Brooks that Morris would enter her home at approximately 9:00 a.m. on the date in question.

But before Morris filed suit, he received a letter from Cousineau's counsel, opining that Morris "conducted himself more like a bungling thief than a so-called 'professional' photographer" while at Brooks's home, that he was a "victim of his

4

own stupidity and was the cause of his injuries," and that his "behavior, from the time he arrived at [the home] through the time he caused himself to get shot inside . . . , was, in a word: braindead." As a result, during discovery, Morris sought to confirm whether Cousineau actually believed what her counsel said in this letter, which Morris considered to be "outlandish" statements. So, he sent requests for admission to Cousineau in which he quoted the statements from this letter verbatim. In other words, Morris's requests for admission did not ask Cousineau to admit whether she *believed* those statements were true, just to admit the statements themselves. Cousineau thereafter admitted all of Morris's requests for admission, including these verbatim statements, which included that she "owed no duty whatsoever to Mr. Morris," that she "was not the cause of Mr. Morris's injuries," and that REEA "did not cause injury to Mr. Morris."

Discovery was then delayed for several months due to a pending motion to dismiss, which Brooks first filed on April 19, 2018, on the ground of statutory immunity,[4] and which stayed discovery until the motion was denied on June 25,

---

[4] *See* OCGA § 51-11-9 and § 16-3-23 (3).

2018.[5] Then, on July 17, 2018, Cousineau filed a motion to dismiss on the ground that she could not be held liable because she did not participate in Brooks's listing. The stay on discovery from this motion was then lifted when the trial court issued an order converting the motion to dismiss into one for summary judgment on September 18, 2018. The court gave Morris 35 days in which to respond to the converted motion for summary judgment (*i.e.*, by October 22, 2018).

In an affidavit filed as an exhibit to her motion, Cousineau averred that (1) she was a member and manager of REEA but was not hired by Brooks to be the listing agent, although another REEA agent was listed; (2) because she was not hired by Brooks, she was not personally responsible for coordinating and communicating photography appointments with Brooks; and (3) she had no involvement with or knowledge of the photography appointment. And after Cousineau answered the above-referenced requests for admission, REEA and Cousineau filed a *joint* motion for summary judgment on October 15, 2018, arguing that they owed no duty of care to Morris and, thus, did not proximately cause his injuries. In the alternative, they argued they were entitled to summary judgment on the grounds that Morris's

_____

[5] In denying the motion, the trial court decided not to convert the motion to dismiss into one for summary judgment "[b]ecause the discovery period began less than two months prior" to its order.

6

contributory or comparative negligence barred recovery because his injuries were solely caused by his own conduct.

When filing their joint motion, REEA and Cousineau further asked the court to require Morris to respond to all of the motions for summary judgment within the original deadline for Cousineau's singular motion (*i.e.*, October 22, 2018). The trial court never ruled upon the request to consolidate the response deadline; but Morris responded to the motion within this period (on October 19, 2018), while *also* requesting a continuance of 45 days after the close of discovery. In doing so, Morris cited scheduled depositions that had yet to take place—including Cousineau's deposition, which was scheduled for October 18, 2018, the day *before* Morris filed his response. Morris also claimed that he had been unable to "secure affidavits from Brooks, Cousineau, REEA, or its employees."

On November 19, 2018, REEA and Cousineau filed a motion seeking a protective order in response to a second request for production of documents that Morris sent on September 24, 2018. Then, on November 30, 2018, REEA and Cousineau filed a joint reply in support of their motion for summary judgment. They mentioned that, since filing their motion for summary judgment, Cousineau had been deposed on October 18, 2018; Brooks and her husband were deposed on November

7

2, 2018; and Brooks's home was inspected on November 2, 2018. On December 3, 2018, Morris filed an amended complaint for damages. Then, on December 12, 2018, the defendants noticed the filing of original discovery in the form of Morris's deposition, taken on December 5, 2018. They also requested that Morris file the depositions of Cousineau, taken on October 18, and Brooks and her husband's depositions, taken on November 2, 2018.

Following a hearing on December 3, 2018, at which Morris again mentioned *additional* depositions that were scheduled but had not yet occurred, the trial court granted the joint motion for summary judgment. In doing so, the trial court relied on the defendants' admissions and pointed to a "lack of evidence of record to support the duty and causation elements of [Morris's] claims against them." The court also denied Morris's request for a continuance, concluding that "[i]t does not appear from [Morris's] affidavits . . . that he cannot . . . present by affidavits facts essential to justify his opposition."[6] This appeal by Morris follows.

---

[6] *See* OCGA § 9-11-56 (f) ("Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavits facts essential to justify his opposition, the court may refuse the application for judgment, or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had, or may make such other order as is just.").

8

Summary judgment is proper when "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[7] And we apply a *de novo* standard of review to appeals from a grant of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in "the light most favorable to the nonmovant."[8] With these guiding principles in mind, we turn to Morris's enumerations of error.

1. Morris argues that the trial court erred by relying on the defendants' admissions—which were not binding on him, the party who sent the requests for admission—to grant summary judgment to REEA and Cousineau. And in the absence of these admissions, he contends that the trial court erred in doing so. We agree.

Morris claims that this is a case of first impression in Georgia and, therefore, urges us to adopt the approach taken by federal courts when interpreting the Federal Rules of Civil Procedure. And should we do so, Morris contends that, without the admissions, the defendants failed to present *any* evidence in support of their motion

---

[7] *McCoy*, 232 Ga. App. at 620 (punctuation omitted).

[8] *Id.* (punctuation omitted).

for summary judgment.[9] The defendants counter that the trial court did *not* base its decision solely on the admissions and, thus, there is no need for this Court to consider whether a propounding party is bound by the responding party's admissions.

Although REEA and Cousineau suggest it is unnecessary for us to determine whether it was proper to consider their admissions as binding upon Morris, we disagree. To be sure, the trial court did conclude that the defendants "pointed to a lack of evidence of record to support the duty and causation elements" of Morris's claim, but we disagree with the court's conclusion that REEA and Cousineau did anything other than rely on their *own* admissions. And accordingly, it *is* necessary for us to determine whether those admissions were binding upon Morris.

(a) In the order granting summary judgment to REEA and Cousineau, the trial court noted:

> Among the matters admitted by Cousineau and REEA were (1) that Defendant Cousineau owed no legal duty to Mr. Morris, and (2) that Defendant REEA did not cause injury to Mr. Morris. Accordingly, the Court finds that Defendants' pointed to a lack of evidence of record to support the duty and causation elements of Plaintiff's claims against

---

[9] Alternatively, Morris argues that the admissions are only opinions, which cannot be the sole basis for the grant of summary judgment; but we need not reach this alternative argument.

10

them.[ ] Thus, pretermitting whether Defendants' admissions were conclusive as against Plaintiff, the Court has reviewed all of the allegations of the parties, and all evidence on file, to determine whether Plaintiff pointed to evidence sufficient to create an issue of fact for a jury as to the causation and duty elements of Plaintiff's claims.[10]

But as previously discussed, after Cousineau answered the requests for admission, REEA and Cousineau filed a *joint* motion for summary judgment on October 15, 2018, arguing that (1) they owed no duty of care to Morris and, thus, did not proximately cause his injuries, and (2) in the alternative, Morris's contributory or comparative negligence barred recovery because his injuries were solely caused by his own conduct. In support of these arguments, they attached and cited their admissions, but also "[a]ll other pleadings and materials of record."

Notwithstanding this catchall phrase (contained in their supporting brief and statement of undisputed material facts), the defendants discussed and relied *solely* on their *own* admissions to support these arguments, *repeatedly* stating that the "admissions on file" established that they were entitled to summary judgment. Furthermore, in their motion requesting that the trial court shorten the time for Morris

---

[10] (Footnote omitted).

11

to respond to the joint motion for summary judgment,[11] REEA and Cousineau asserted: "It . . . bears repeating that the Joint Motion for Summary Judgment *is based on judicial admissions* that are not subject to contradiction or explanation, so little time is needed for Plaintiff to respond." And in their motion for a protective order, REEA and Cousineau again cited their *admissions* when they asserted "it has been conclusively established that neither REEA nor Cousineau owed a duty to Plaintiff" and that the admissions "are the subject of the pending Joint Motion for Summary Judgment." Accordingly, the defendants argued that Morris had no need for further discovery because, as per the admissions, "the duty issue ha[d] been conclusively resolved in [their] favor[.]" Indeed, not once in *any* of their filings did REEA and Cousineau argue or discuss a *lack* of evidence to support Morris's cause of action.[12]

On a request for summary adjudication, the motion may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[11] Once again, the trial court never ruled on this motion.

[12] *Cf. Elder v. Hayes*, 337 Ga. App. 826, 831-32 (2) (788 SE2d 915) (2016) (holding that trial court erred in denying summary judgment to defendants when they argued that the record contained no evidence as to the alleged cause of plaintiff's injuries).

12

and that the moving party is entitled to a judgment as a matter of law."[13] And a defendant who seeks summary judgment "may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims."[14] Accordingly, a defendant who will not bear the burden of proof at trial "need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case."[15] When this is done, a plaintiff cannot "rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[16]

---

[13] OCGA § 9-11-56 (c).

[14] *Sheffield v. Conair Corp.*, 348 Ga. App. 6, 7 (821 SE2d 93) (2018) (punctuation omitted).

[15] *Id.* (punctuation omitted); *see Meadows v. Diverse Power, Inc.*, 296 Ga. App. 671, 671 (675 SE2d 571) (2009) ("The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.").

[16] *Sheffield*, 348 Ga. App. at 7 (punctuation omitted). *Cf. Big Sandy Partnership, LLC v. Branch Banking & Trust Co.*, 313 Ga. App. 871, 872 (1) (723 SE2d 82) (2012) ("[The movant] was not required in support of its motion for summary judgment to present evidence to disprove affirmative defenses alleged in the [the non-movant's] pleadings on which the [the non-movants] had the burden of proof at trial. Instead, [the movant] carried its burden on summary judgment by pointing out

13

In this case, REEA and Cousineau *only* discussed their own *admissions*, not a lack of evidence.[17] And if those admissions were not binding on Morris, without REEA and Cousineau ever arguing a *lack* of evidence, then Morris was not required to present any counter evidence or materials in affirmative support of his position because REEA and Cousineau did not meet their burden on summary judgment.[18]

---

the absence of any evidence in the record to support the alleged affirmative defenses." (citation omitted)).

[17] *Cf. Wertz v. Allen*, 313 Ga. App. 202, 208 (2) (721 SE2d 122) (2011) ("In her motion for summary judgment, [the defendant] argued that there was a lack of evidence establishing the requisite elements of [the plaintiff's] fraud claim, specifically including a false representation made to [the plaintiff]. Once [the defendant] pointed to the absence of evidence to support this element of [the plaintiff's] fraud claim, [the plaintiff] had to come forward with specific evidence giving rise to a triable issue." (punctuation omitted)); *Roberts v. Nessim*, 297 Ga. App. 278, 284 (1) (b) (676 SE2d 734) (2009) ("Once [the defendant] pointed to the absence of evidence to support these elements of [the plaintiff's] fraud claim, [the plaintiff] had to come forward with specific evidence giving rise to a triable issue." (punctuation omitted)); *Kilroy v. Alpharetta Fitness, Inc.*, 295 Ga. App. 274, 276 (1) (671 SE2d 312) (2008) ("The [movants] argued that there was insufficient evidence as to each of [the] elements [of fraud].").

[18] *See Ga.-Pacific, LLC v. Fields*, 293 Ga. 499, 503-04 (2) (748 SE2d 407) (2013) ("The law is well established that . . . the non-movants were not required to produce any counter evidence or materials in affirmative support of their side of the issue until [the movants] carried the burden placed upon them as the movant for summary judgment." (punctuation omitted)); *Solomon v. Barnett*, 281 Ga. 130, 132 (636 SE2d 541) (2006) (same).

14

Nor would it be appropriate to affirm the trial court's grant of summary judgment as "right for any reason" when REEA and Cousineau did not point to a *lack* of evidence, as the trial court alternatively concluded.[19] Indeed, given that REEA and Cousineau did not actually argue that there was a *lack* of evidence to support Morris's claims, and instead solely focused on the argument that Morris was *precluded* from presenting evidence that would contradict *their* responses to his requests for admission, we cannot say that Morris had a full opportunity to respond to the issue of a *lack* of evidence because it was not raised below.[20] Thus, we will now consider

---

[19] *See Bullington v. Blakely Crop Hail, Inc.*, 294 Ga. App. 147, 152 (3) (668 SE2d 732) (2008) ("Although, as a matter of judicial economy, we will affirm a grant of summary judgment under the 'right for any reason' rule, we will generally only do so when the judgment may be sustained upon a legal basis apparent from the record *and which was fairly presented in the court below*." (punctuation omitted)).

[20] *See Fields*, 293 Ga. at 504 (2) ("A grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond." (punctuation omitted)); *Hope Elec. Enter., Inc. v. Schindler Elevator Corp.*, 324 Ga. App. 859, 864 (1) (752 SE2d 5) (2013) (same). *Cf. Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001) ("[I]t is appropriate for an appellate court to determine whether the trial court's ruling was right for any reason, including whether it was right for a ground asserted in the summary judgment motion that the trial court chose not to address in granting summary judgment.").

whether the defendants' admissions to Morris's requests bound him and, as a result, entitled REEA and Cousineau to summary judgment in their favor.

(b) Our analysis begins with the text of OCGA § 9-11-36. In interpreting any statute, we necessarily begin by considering "familiar and binding canons of construction."[21] And in construing the meaning of a statute, our charge is to "presume that the General Assembly meant what it said and said what it meant."[22] To that end, we must afford the statutory text its plain and ordinary meaning,[23] consider the text contextually,[24] read the text "in its most natural and reasonable way, as an ordinary

---

[21] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014).

[22] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[23] *Deal*, 294 Ga. at 172 (1) (a); *see State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies)[.]"); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (citation and punctuation omitted)).

[24] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (citation and punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory

speaker of the English language would,"[25] and seek to "avoid a construction that makes some language mere surplusage."[26] So, when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[27]

OCGA § 9-11-36 provides that "[a]ny matter admitted under this Code section is *conclusively established* unless the court, on motion, permits withdrawal or amendment of the admission."[28] The issue before us, then, is whether an admission

---

text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same); *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (same); *Martinez*, 325 Ga. App. at 273 (2) (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . ."); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used." (citation and punctuation omitted)).

[25] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *Martinez*, 325 Ga. App. at 273 (2).

[26] *In the Interest of L. T.*, 325 Ga. App. at 592 (754 SE2d 380) (citation and punctuation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *Singletary*, 310 Ga. App. at 572.

[27] *Luangkhot*, 292 Ga. at 424 (1) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)); *Martinez*, 325 Ga. App. at 273 (2) (same).

[28] OCGA § 9-11-36 (b) (emphasis supplied).

17

under OCGA § 9-11-36 is binding on not only the admitting party but also on the *requesting* party. And in interpreting this Code section, we previously determined that such an admission is "comparable to a judicial admission, rather than an evidentiary admission,"[29] and as a result, "relieves the *opposing* party from the need of any evidence, as to the matter admitted."[30] We have also explained that

> an answer to a request for admissions is a judicial admission conclusive on the party *making* the admission (in the absence of an order permitting the party to withdraw or amend the admission, OCGA § 9-11-36 (b)) and any evidence inconsistent with the binding effect of the admission could not be considered by the trial court on motion for summary judgment.[31]

---

[29] *McClarty v. Trigild Inc.*, 339 Ga. App. 691, 693 (794 SE2d 408) (2016); *accord Jackson v. Nemdegelt, Inc.*, 302 Ga. App. 767, 771 (691 SE2d 653) (2010); *Vaughn v. Metro. Prop. & Cas. Ins. Co.*, 260 Ga. App. 573, 574 (3) (580 SE2d 323) (2003); *Pulte Home Corp. v. Woodland Nursery & Landscapes*, 230 Ga. App. 455 (1) (496 SE2d 546) (1998); *Britt v. West Coast Cycle*, 198 Ga. App. 525, 526 (1) (402 SE2d 121) (1991).

[30] *McClarty*, 339 Ga. App. at 693 (punctuation omitted) (emphasis supplied); *accord Jabaley v. Jabaley*, 208 Ga. App. 179, 179 (1) (430 SE2d 119) (1993).

[31] *Am. Cyanamid Co. v. Allrid*, 176 Ga. App. 831, 831-32 (338 SE2d 14) (1985) (physical precedent only) (emphasis supplied); *see Wurlitzer Co. v. Watson*, 207 Ga. App. 161, 165 (2) (427 SE2d 555) (1993) ("This admission is binding upon [the admitting party] and no evidence can be admitted or considered to contradict it.").

18

Put another way, while it is true that we have never explicitly held that an admission under OCGA § 9-11-36 is *not* binding on the requesting party, we *have* explicitly explained that such admissions are binding on the *admitting* party.[32] And today, looking to the remainder of the statute and its plain meaning, we conclude that admissions under OCGA § 9-11-36 are *not* binding on the requesting party because the statute only contemplates that the answering party be bound.

Indeed, from the remainder of OCGA § 9-11-36 (b), it is clear that the rule binds only the admitting party to the admission. For example, the statute provides that "the court may permit withdrawal or amendment [of an admission] when the presentation of the merits of the action will be subserved thereby and *the party who obtained the admission* fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."[33] In other words, the party who *obtains* the admission does so for purposes of expediting his action,[34]

---

[32] *See supra* note 29.

[33] OCGA § 9-11-36 (b) (emphasis supplied).

[34] *See Elrod v. Sunflower Meadows Dev., LLC*, 322 Ga. App. 666, 668 (1) (745 SE2d 846) (2013) ("The purpose of requests for admissions is to expedite trial and clarify the issues in a case, not gain tactical advantage over an opponent." (punctuation omitted)).

19

and the party who responds to the request may not withdraw his or her admission if doing so will prejudice the *requesting* party.[35] Additionally, any admission made by *a party* under this Code section is "for the purpose of the pending action only and is not an admission *by him* for any other purpose, nor may it be used against *him* in any other proceeding."[36] Thus, the statute contemplates that only the party—singular—who responds to requests for admission is bound by those admissions. Finally, our interpretation—that admissions under OCGA § 9-11-36 bind only the party making those admissions, not the party requesting the

---

[35] *See Sayers v. Artistic Kitchen Design LLC*, 280 Ga. App. 223, 226 (2) (633 SE2d 619) (2006) ("[T]he trial court should consider whether withdrawal would serve the presentation of the merits and whether it would prejudice the party who obtained the admission."); *see also Whitemarsh Contractors, Inc. v. Wells*, 249 Ga. 194, 195 (288 SE2d 198) (1982) (recognizing that "providential cause" requirements of former Code section were supplanted by reenacted Code section that permits withdrawal or amendment when "the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits" (punctuation omitted)); *Cielock v. Munn*, 244 Ga. 810, 811 (262 SE2d 114) (1979) (favorably citing *Nat'l Bank of Ga. v. Merritt*, 130 Ga. App. 85 (202 SE2d 193) (1973), for that case's recognition of the changes to Georgia's Civil Practice Act); *Nat'l Bank of Ga. v. Merritt*, 130 Ga. App. 85, 87 (202 SE2d 193) (1973) ("This 'withdrawal' of admissions upon a proper showing is a new remedy allowed to defaulting requestees. That, however, puts the burden on the one who has failed to answer . . . to be bound by the 'admissions,' unless he takes the initiative and files a motion and succeeds in defeating such admissions.").

[36] OCGA § 9-11-36 (b) (emphasis supplied).

admissions—comports with the interpretation of similar rules of civil procedure in many other jurisdictions,[37] including the federal courts.[38]

Accordingly, we agree with Morris that the trial court erred by determining that *Morris*—the requesting party—was bound by the defendants' responses to his

---

[37] *See Aspen Petroleum Prods. Inc. v. Zedan*, 113 P3d 1290, 1292 (Co. Ct. App. 2005) (holding that requests for admission are not binding upon the requesting party); *Indiana Const. Serv., Inc. v. Amoco Oil. Co.*, 533 NE2d 1300, 1301 (Ind. 4th Dist. Ct. App. 1989) (same); *Shell Oil Co. v. Murrah*, 493 So2d 1274, 1277 (Miss. 1986); *Poulsen v. Russell*, 300 NW2d 289, 298 (VII) (A) (Iowa 1981) (same); *Black v. Palm Beach Cnty.*, 342 So2d 1034, 1035 (Fla. 4th Dist. Ct. App. 1977) (same).

[38] *See Brook Vill. N. Assocs. v. Gen. Elec. Co.,* 686 F.2d 66, 69-75 (1st Cir. 1982) (holding that although defendant was bound by amount of damages set forth in request to admit that it failed to answer and could not argue for a lower amount, plaintiff was free to introduce evidence that damages were even higher because it was not bound to that amount); *Champlin v. Okla. Furniture Mfg. Co.*, 324 F2d 74, 76 (10th Cir. 1963) ("The submission of requests for admissions by a litigant does not, in and of itself, bind the litigant to the truth or existence of the facts contained in the answers to the requests."); *Hurt v. Coyne Cylinder Co.,* 124 FRD 614, 615 (W.D. Tenn. 1989) ("The purpose of a request for admissions generally is not to discover additional information concerning the subject of the request, but to enforce the opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof."); *Jones v. Employers Ins. v. Wausau*, 96 FRD 227, 229 (II) (N.D. Ga. 1982) ("In general, an admission [under Federal Rule of Civil Procedure 36 (b)] should be binding on the party who made it."); *see also* 8B Wright and Miller, *Federal Prac. & Proc. Civ.*, § 2264 (3d ed. 2020) ("The admission does not bind the party who requested it. Even though it introduces the response in evidence it is free to produce other evidence contradicting the facts contained in the response.").

requests for admission.[39] And it follows that Morris was not required to present any counter evidence or materials in affirmative support of his position until REEA and Cousineau met their burden on summary judgment.[40] As a result, the trial court erred in granting summary judgment to REEA and Cousineau, and we reverse the trial court's grant in their favor.[41]

2. Because we agree that the trial court erred in granting summary judgment to REEA and Cousineau when they relied solely on admissions that did not bind Morris, we need not address Morris's alternative arguments in favor of reversing the grant of summary judgment.

---

[39] *See supra* notes 38 and 39; *see also generally* Orin S. Kerr, *A Theory of Law*, 16 Green Bag 2d 111 (2012).

[40] *See Fields*, 293 Ga. at 503-04 (2) ("The law is well established that . . . the non-movants were not required to produce any counter evidence or materials in affirmative support of their side of the issue until [the movants] carried the burden placed upon them as the movant for summary judgment." (punctuation omitted)); *Solomon*, 281 Ga. at 132 (same).

[41] *See Marcum v. Gardner*, 283 Ga. App. 453, 456 (641 SE2d 678) (2007) (reversing grant of summary judgment when movant neither disproved plaintiff's claim with their "own evidence establishing the absence of any genuine issue of material fact or by showing from the affidavits, depositions and other documents in the record that there was an absence of evidence to support at least one essential element of plaintiff's claim" (punctuation omitted)).

For all these reasons, we reverse the trial court's grant of summary judgment in favor of REEA and Cousineau.

*Judgment reversed. Rickman and Brown, JJ., concur.*